LABORERS FRINGE BENEFIT FUNDS—DETROIT AND VICINITY, Plaintiff-Appellant,

v.

NORTHWEST CONCRETE & CONSTRUCTION, INC. and James M. Haley, Defendants-Appellees.

No. 79–1444.

United States Court of Appeals, Sixth Circuit.

Argued April 12, 1981.

Decided May 12, 1981.

Sheldon M. Meizlish, Rolland R. O'Hare and Ann E. Neydon, Detroit, Mich., for plaintiff-appellant.

James M. Haley, pro se.

Before WEICK and JONES, Circuit Judges, and CECIL, Senior Circuit Judge.

PER CURIAM.

Laborers Fringe Benefit Funds—Detroit and Vicinity (the Fund) filed this action against Northwest Concrete & Construction, Inc. (Northwest) and James M. Haley to recover contributions to the Fund. Northwest owed these contributions pursuant to fringe benefit provisions of its collective bargaining agreement with Local Union 334, 1076 and 1191 of the Laborers International Union, AFL–CIO (the Union). The Fund also sought to enjoin Northwest and Haley from future violations of those provisions. The district court entered a default judgment against the defendants for the unpaid contributions, but denied the injunctive relief. Because we believe that the Employee Retirement Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*, provides equitable remedies for the nonpayment of the contributions, we reverse the district court's denial of the injunction.

I.

Haley owns and operates various companies which do business in the Detroit area. Northwest, a Michigan corporation, is one of those companies. Northwest and Haley reside and have principal places of business in Detroit.

Northwest and the Union entered into a collective bargaining agreement under which the defendants became obligated to make periodic payments for fringe benefits for and on account of employees represented by the Union.

The Fund, an unincorporated trust fund administered under section 302 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 186, and under ERISA, is the trustee for the contributions.

Northwest conducted its construction business for a single year and under the collective bargaining agreement it thereby became obligated to the Fund for the benefit contributions. Northwest and Haley refused to pay the benefits to the Fund. In response, the Fund filed this action for the unpaid contributions and for a permanent injunction, restraining Haley and Northwest from violating the fringe benefit provisions of their collective bargaining agreements with the Union.

Haley ignored the Fund's discovery demand. In fact, Haley consistently refused to appear at any of the proceedings below until a bench warrant was issued for his arrest.

The district court entered a default judgment against the defendants for the unpaid contributions. The court also awarded to the Fund its net costs and attorney fees. However, the court denied the injunctive relief sought by the Fund.

II.

 The sole question in the instant appeal is whether or not a fiduciary of an employee benefit plan can bring an action under ERISA to enjoin a recalcitrant em-

ployer from failing to comply with the benefit payment provisions of a labor agreement. We believe that such an action is proper.

The purpose of ERISA was to stabilize the rights and liabilities involved in benefit plans established under collective bargaining agreements.[1] Section 2 of ERISA states, *inter alia*, that it is the declared policy of ERISA to protect participants of these plans by providing them with legal remedies, sanctions and access to federal courts to secure redress for violations of ERISA.[2]

To effectuate this policy, Congress promulgated enforcement provisions. Under these provisions, a violation of ERISA may subject the offender to criminal or civil penalties under sections 501 and 502. Section 502(a)(3) provides, in part, that a civil action may be brought:

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3). In this manner, Congress made it abundantly clear that an employer would not be permitted to circumvent or ignore its funding, payment and other obligations under ERISA.

The legislative history underlying section 502 indicates that Congress intended that the enforcement provisions should have teeth: the provisions should be liberally construed "to provide both the Secretary and participants and beneficiaries with broad remedies for redressing or preventing violations of the Act." H.R.Rep.No.93–533, 93d Cong., 2d Sess. 17, *reprinted in* [1974] U.S.Code Cong. & Ad.News, p. 4639, 4655. This history further states that "[t]he intent of the Committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law for recovery of benefits due to participants." *Id.*

Thus, on the basis of the plain language of the statute and the attendant legislative history, we hold that section 502(a)(3) is unambiguous evidence of Congress' express intent to permit federal courts to issue injunctions. Therefore, the district court be-

---

1. The express congressional intent underlying ERISA was set forth in section 2 of ERISA, 29 U.S.C. § 1001(a) which provides the following:

 (a) The Congress finds ... that the continued well-being and security of millions of employees and their dependents are directly affected by these plans; that they are affected with a national public interest; that they have become an important factor affecting the stability of employment and the successful development of industrial relations; ... *that despite the enormous growth in such plans many employees with long years of employment are losing anticipated retirement benefits owing to the inadequacy of current minimum standards, the soundness and stability of plans with respect to adequate funds to pay promised benefits may be endangered; that owing to the termination of plans before requisite funds have been accumulated, employees and their beneficiaries have been deprived of anticipated benefits;* and that it is

therefore desirable in the interests of employees and their beneficiaries, for the protection of the revenue of the United States, and to provide for the free flow of commerce, that minimum standards be provided assuring the equitable character of such plans and their financial soundness.

See also, *Central States Southeast and Southwest Areas Pension Fund v. Hitchings Trucking, Inc.,* 472 F.Supp. 1243, 1247 (E.D.Mich. 1979).

2. Congress stated:

 (b) It is hereby declared to be the policy of this Act to protect ... the interests of participants in employee benefit plans and their beneficiaries ... by establishing standards of conduct, responsibility and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts. 29 U.S.C. § 1001(b).

low had authority under section 502(a)(3) to enjoin the defendants' misconduct.[3]

## III.

▮ The primary prerequisites for the issuance of injunctions include findings that the plaintiff is threatened by some injury for which he has no adequate remedy at law; "that irreparable injury is threatened, the injury contemplated must be real, not fancied; actual, not prospective; and threatened, not imagined. . . ." 11 C. Wright and A. Miller, *Federal Practice and Procedure* § 2942, at 370 (1973); and that the issuance of the injunction does not offend public policy.

In this case, an examination of the entire record demonstrates that the Fund's legal remedy is not adequate. Haley has shown persistent contempt for the judicial process. It is very likely that he will continue to withhold employee benefit contributions from the Fund. Furthermore, the Fund asserts that its prospects for collecting the money judgment in this case, or in any other situation absent an injunction, are very slight indeed.[4] Moreover, because Haley is a principal in various other construction companies in the Detroit area, Haley's continued violations of the labor agree-ments and ERISA will irreparably injure the Fund. Finally, permanently enjoining Haley from violations of the fringe benefit provisions of the various collective bargaining agreements to which he is a real party in interest, does not contravene public policy. In some cases, like the instant appeal, employers scorn their responsibilities under our labor laws and ignore the mandates of our courts. In that event, the issuance of a permanent injunction becomes necessary so that if the employer disobeys the injunction then he may be subject to the full panoply of criminal sanctions.

Accordingly, we REVERSE and REMAND to the district court with instructions to issue an injunction in favor of the Fund.

---

**3.** In view of section 502, other federal courts have granted injunctive relief to participants and beneficiaries under ERISA to enjoin employers from refusing to comply with employee benefit provisions of labor agreements. *Operating Engineers Central Pension Fund v. Joski Construction Co., Inc.*, 441 F.Supp. 849 (E.D. Wis.1977); *Central States, Southeast and Southwest Areas Health and Welfare and Pension Funds, et al. v. Johnson Cartage Company,* 84 CCH Labor Cases ¶ 10806 (N.D.Ind., # S78–0121, Aug. 21, 1978).

**4.** The Fund asserts that the Eastern District of Michigan ordered Haley to pay $52,646.26 in fringe benefit contributions for the years 1973–75 to another fund which Haley has not yet satisfied. *Bricklayers Fringe Benefit Funds, Metropolitan Area v. James M. Haley*, CA # 75–72475 (E.D.Mich., September 13, 1976).