Michael ROSENTHAL, as Trustee of and Participant in the Taxicab Industry Local 3036 Benefit Fund, Taxicab Industry Pension Fund, Taxicab Industry Health and Welfare Fund and Taxicab Industry Training and Education Fund, Plaintiff,

v.

ANN SERVICE CORPORATION, et al., Defendants.

No. 83 CIV 1829 (LBS).

United States District Court, S.D. New York.

Oct. 4, 1983.

---

Donald F. Menagh, New York City, for plaintiff.

Rosenman, Colin, Freund, Lewis & Cohen, Marvin R. Lange, New York City, for defendants.

## OPINION

SAND, District Judge.

Plaintiff, Michael Rosenthal, is a participant in and trustee of four funds: 1) The Taxicab Industry Local 3036 Benefit Fund ("Benefit Fund"); 2) The Taxicab Industry Pension Fund ("Pension Fund"); 3) The Taxicab Industry Health and Welfare Fund ("Welfare Fund"); and 4) The Taxicab Industry Training & Education Fund ("Training Fund"). These funds were established pursuant to a collective bargaining agreement signed by the Metropolitan Taxicab Board of Trade ("MTBOT") and the New York City Taxi Drivers and Allied Workers Union, Local 3036 SEIU, AFL–CIO ("Local 3036"). The defendants are nineteen taxicab employers who are or have been members of the MTBOT.

Plaintiff alleges that defendants violated the collective bargaining agreement by, *inter alia,* (1) failing to make required contributions to the above named funds, (2) failing to adequately report fund participants' loss of eligibility, and (3) fraudulently manipulating the ratio of fund participants to fund contributors so as to cause "underfunding." Plaintiff bases this action on various provisions of ERISA and also, in the case of (2) and (3), "applicable New York State law." Defendants move for summary judgment, urging the Court to enter judgment in their favor because this Court lacks subject matter jurisdiction and plaintiff lacks standing.[1]

### Subject Matter Jurisdiction

In objecting to this Court's subject matter jurisdiction, defendants concentrate on the language of ERISA, contending that the Act's framers drew a clear distinction between "collectively bargained agreements" and "plans." Actions for contributions to funds established by the former, defendants argue, do not fall within the statute's jurisdictional grant.[2]

---

1. Though defendants do not denominate their claim an objection to "standing," it clearly fits within this category. For example, their Memorandum in support of the motion argues, "Both the law and the individual trust agreements clearly prohibit one individual trustee from bringing suit on behalf of a fund." Page 8. We note, however, that this standing argument is at the same time an objection to the ripeness of plaintiff's lawsuit. Defendants suggest that plaintiff may be able to prosecute this suit as a derivative action. Memorandum at 15–16. A prerequisite to this would be compliance with the "demand" requirement of Fed.R. Civ.P. 23.1.

2. Defendants also dispute the propriety of seeking a legal remedy at all under ERISA

We find the alleged distinction far less clear than defendants contend. The provision cited by plaintiff indicates a similarity of treatment of "plans" and "agreements":

> "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

ERISA § 515, 29 U.S.C. § 1145 (Supp.1983). The cases defendants refer to in their memorandum provide little support for the alleged distinction. The Second Circuit's recent decision in *Pressroom Unions-Printers League Income Security Fund v. Continental Assurance Co.,* 700 F.2d 889 (2d Cir. 1983), merely establishes that a pension benefit fund *per se* cannot bring suit under

ERISA.[3] By implication, it reinforces the contention that a participant or fiduciary may sue under ERISA. *O'Brien v. Sperry Univac,* 458 F.Supp. 1179 (D.D.C.1978), dismissing for lack of subject matter jurisdiction an action brought solely under a "summary plan description," rests on the fact that this description differed in material respects from the plan itself. It is not by any means "precisely analogous," Defendants' Memorandum at p. 19, to the issue before this Court.[4]

■ We conclude that Congress intended that ERISA provide a maximum amount of protection to covered employees,[5] and hold that the collective bargaining agreement providing for contributions to specified funds constitutes a "plan" under ERISA. Thus, claims involving alleged underfunding, failure to render proper reports, and collusion, may be brought in federal court.[6]

§ 502(a)(3), 29 U.S.C. § 1132(a)(3). *See* Defendants' Memorandum at 20 n. 10. In light of recent amendments to § 502, permitting, among other remedies, an award of interest, unpaid contributions, liquidated damages and "such other legal or equitable relief as the court deems appropriate," we reject defendants' contention. See ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2) (Supp.1983).

3. We do note, however, that this decision may bear on the viability of a derivative suit discussed *supra* n. 1.

4. The same can be said of this Court's decision in *Lewart v. Consolidated Cigar Co.,* 80 Civ. 1654 (LBS) (Oct. 23, 1980), cited by defendants at page 21, involving an attempt to use ERISA to solve a land dispute between a plaintiff fiduciary and a defendant who neither employed the persons to whom plaintiff owed fiduciary duties nor owed any ERISA obligations itself.

5. This conclusion finds support in cases such as *Laborers Fringe Benefit Funds v. Northwest Concrete and Construction, Inc.,* 640 F.2d 1350 (6th Cir.1981), which, in holding that a fiduciary of an employee benefit plan can sue under ERISA to force an employer to comply with the benefit payment provisions of a collective bargaining agreement, quoted extensively from ERISA's legislative history:

> The legislative history underlying section 502 indicates that Congress intended that the enforcement provisions should have teeth:

> the provisions should be liberally construed "to provide both the Secretary and participants and beneficiaries with broad remedies for redressing or preventing violations of the Act." H.R.Rep. No. 93–533, 93d Cong., 2d Sess. 17, *reprinted in* [1974] U.S.Code Cong. & Ad.News, p. 4639, 4655. This history further states that "[t]he intent of the Committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law for recovery of benefits due to participants." *Id.*

640 F.2d at 1352.

6. Defendants make a further attempt to avoid federal jurisdiction by arguing, in effect, that even if the collective bargaining agreement constitutes an ERISA "plan," this Court may determine as a matter of law that defendants have not violated ERISA. They argue that "the Agreement provisions upon which plaintiff sues relate entirely to the time at which a driver may properly lease." Defendants' Memorandum at 21. Under the terms of the collective bargaining agreement, contributions to the plans are made solely for taxi driver employees and not for lessees. The "premature leasing" that plaintiff alleges thus would have a negative effect on contributions made to the funds. This fits precisely within the category of practices ERISA was enacted to prevent. *See Northwest Concrete,* 640 F.2d at 1352.

1232

*Plaintiff's Standing as an Individual Trustee*

Defendants argue that even if the collective bargaining agreement constitutes an ERISA "plan," plaintiff fails to qualify as a participant or fiduciary under ERISA § 502, 29 U.S.C. 1132, and thus lacks standing to bring this action.

Defendants urge that permitting plaintiff to bring this suit as trustee for the funds would violate both the Taft-Hartley Act and the actual trust agreements. For the following reasons, we agree.

■ The trust agreements covering the Pension Fund, Welfare Fund, and Training Fund have been drafted so as to comply with § 302(c)(5)–(8) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5)–(8). This statute permits employer payments to funds such as the three just mentioned, provided that

> "the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon...."

This equal representation provision aims to prevent misuse of labor organization funds and exploitation of positions of trust by unscrupulous labor officials. *See generally Denver Metro. Ass'n v. Journeyman Plumbers,* 586 F.2d 1367, 1374–75 (10th Cir.1978); *Costello v. Lipsitz,* 547 F.2d 1267 (5th Cir.), *cert. denied,* 434 U.S. 829, 98 S.Ct. 109, 54 L.Ed.2d 88 (1977). Exhibits and memoranda submitted by defendants and not challenged by plaintiff satisfy this Court that the Pension Fund, Welfare Fund, and Training Fund—administered by equal numbers of union and employer trustees—meet the Taft-Hartley equal representation requirement.[7]

■ Plaintiff's desire to proceed as an individual trustee, without receiving the approval of his co-trustees or even formally presenting to them the grievances that underlie this action, contravenes the letter and spirit of Taft-Hartley and the trust agreements. Moreover, ERISA provides no support for such action. *See* ERISA § 514(d), 29 U.S.C. § 1144(d) (ERISA, with certain exceptions, not to "alter, amend, modify, invalidate, impair, or supersede any law of the United States"). It is no answer to suggest, as plaintiff does, that the dangers Taft-Hartley § 302 was designed to prevent "are not present in the case at bar." Plaintiff's Reply Memorandum at 11. As the Fifth Circuit stated, in a case where union and management "acted with the utmost propriety," *Costello, supra,* 547 F.2d at 1278 n. 36, "[k]nowing that § 302 requires equal representation, remembering that the purpose of § 302 is, at the least partially, to prevent abuses—not requiring that one actually occur, and being aware of the infinite creativity of mankind to circumvent such statutory schemes," we hold that this lawsuit cannot go forward at the present time. In reaching this conclusion, we are mindful of the various alternative avenues open to plaintiff—formal demand upon the entire body of trustees, a lawsuit naming co-trustees as defendants, use of a class action, and possibly a derivative suit. We further note that a contrary decision here would lay the groundwork for lawsuits by any one trus-

7. The Benefit Fund, plaintiff and defendants agree, is "purely a conduit for funding the three other plans." Plaintiff's Reply Memorandum at 12; *see also* Defendants' Memorandum at 11 n. 5. There are few specific provisions that govern its administration, and the degree of joint action required by its trustees is uncertain. Though this Court is sympathetic to defendants' argument that this fund—having no direct "participants" or "beneficiaries" and delineating "no employee welfare plan"—is not an ERISA plan at all, we prefer to base our decision on another ground. We hold that where trust agreements carefully provide for a system of joint trusteeships, an individual trustee, absent clear language to the contrary, may not thwart the system of joint administration by proceeding as a fiduciary of the collecting agent trust. The Benefit Plan, thus, cannot be interpreted in isolation from the sister trust agreements it was designed to fund. A contrary result would be unreasonable in light of the general scheme by which the Pension, Welfare, and Training Funds are administered and, in addition, would render the Benefit Plan in violation of Taft-Hartley.

tee, at any time, to advance what is believed to be the best interests of the trust. This would expose funding employers, the body of trustees, and the trusts themselves to the risk of inconsistent obligations and other uncertainties—precisely the type of evil that Taft-Hartley, the trust agreements, and ERISA itself aim to eliminate.

### Plaintiff as Participant

██ Plaintiff is a "participant" as defined by ERISA § 3(7), 29 U.S.C. § 1002(7). Pursuant to ERISA § 502, a "participant or beneficiary" may sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Defendants argue that plaintiff is not suing to recover benefits due *to him* or to enforce or clarify *his* rights, but rather is seeking to vindicate the rights of the fund.

We note that the Taft-Hartley safeguard would be an ineffective tool if a trustee and participant in a fund could avoid the strictures on individual action imposed by Taft-Hartley § 302 by suing in the guise of a "participant." Moreover, it is clear that plaintiff does not, except in the most oblique sense, seek to enforce duties owed to him personally, but rather acts solely because of an alleged shortfall of monies and neglect of duties owed to the funds. Thus, the posture of this case differs sharply from that of cases such as *Lechner v. National Benefit Fund,* 512 F.Supp. 1220 (S.D.N.Y. 1981), cited by plaintiff, where an individual participant sought only to establish her own eligibility.

In the absence of controlling authority in this Circuit, we choose to follow *Thornton v. Evans,* 692 F.2d 1064 (7th Cir.1982), where the Court, noting that ERISA did not provide an "explicit answer" to the question before it, considered the procedural require-

ments for a suit under the statute against nonfiduciary parties:

> The provision granting to each individual beneficiary a right to sue can generate, and here in fact has generated, a multiplicity of suits. Such a provision does not confer standing on these plaintiffs to proceed with suits on their own behalf against these nonfiduciary defendants when these plaintiffs are suing for a breach of fiduciary duty committed not against them as *individual beneficiaries* but rather against the entire fund.

692 F.2d at 1079 n. 35 (emphasis in original).

For the foregoing reasons, defendants' motion for summary judgment is granted.[8]

SO ORDERED.

---

**8.** The pendent state law claims contained in plaintiff's complaint are dismissed without prejudice. *See, e.g., McLearn v. Cowen & Co.,* 660 F.2d 845, 850 (2d Cir.1981) (Lasker, J., sitting by designation, concurring) ("It is the ordinary practice of the district courts to adhere to *Gibbs* counsel [*United Mine Workers of*

*America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ] ... to decline to exercise further jurisdiction over pendent state claims if the federal claims upon which federal jurisdiction is based are dismissed before trial.") (citing cases).