**TEAMSTERS LOCAL NO. 145, Abel Ferreira and Robert Benedetto**

v.

**William KUBA, Vincent Capocitti, David Gustin, Lewis Fletcher and Ronald Grey.**

**Civ. No. B 86–36(JAC).**

United States District Court,
D. Connecticut.

March 19, 1986.

Gregg D. Adler and Daniel E. Livingston, Hartford, Conn., for plaintiffs.

Norman Zolot, Hamden, Conn., for defendants and intervenor.

## MEMORANDUM OF DECISION

JOSÉ A. CABRANES, District Judge:

This action, which arises out of one in a series of disputes between rival factions of Local 145, International Brotherhood of Teamsters ("Local 145"), seeks to permit the replacement of the union representatives on the Board of Trustees of the Local 145 Health Services and Insurance Fund ("the Fund"). The jurisdiction of this court is invoked pursuant to Section 302(e) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(e), and Section 632(a)(3) of the Employee Retirement In-

come Security Act ("ERISA"), 29 U.S.C. § 1132(a)(3)

Local 145 and two of its newly elected officers ("the plaintiffs") commenced this action on January 20, 1986, by moving for a temporary restraining order and preliminary injunction against five current or former members of the Fund's Board of Trustees ("the defendants"). Two of these defendants are former officers of Local 145 who contend that they have not been properly replaced as employee representatives on the Board of Trustees; the remaining defendants are current or former employer representatives on the Board of Trustees.[1] The Fund was subsequently permitted, absent objection, to intervene as a defendant in this action.

Following an extended emergency hearing on the application for a temporary restraining order, the court approved and entered an order by consent of the parties governing certain matters between them pending further action by the court and setting a date for a hearing on the motion for a preliminary injunction. *See* Order (entered Jan. 21, 1986). This order has remained in effect throughout the pendency of this litigation. The parties agreed in open court on February 7, 1986, to consolidate the hearing on the preliminary injunction with the trial on the merits pursuant to Rule 65(a)(2), Fed.R.Civ.P. Accordingly, after considering the full record of this case, including the evidence adduced at two days of hearings and the stipulations and memoranda submitted by the parties, the court enters the following findings of fact and conclusions of law pursuant to Rule 52(a), Fed.R.Civ.P.

### FINDINGS OF FACT

#### The Local and Its Officers

1. The plaintiff Local 145 is a labor organization with its principal office and place of business in Bridgeport, Connecticut. Local 145 is operated under the provi-

sions of the constitution of the International Brotherhood of Teamsters as well as its own constitution and bylaws. Stipulated Facts (filed Feb. 28, 1986) ("Stip.") at 2.

2. The plaintiffs Abel Ferreira and Robert Benedetto and the defendants William Kuba and Vincent Capocitti are members of Local 145.

3. The bylaws entrust general operations of Local 145 to a seven-member Executive Board consisting of the secretary-treasurer, president, vice president, recording secretary and three "trustees." *Id.* The secretary-treasurer is the highest-ranking officer of Local 145. *See* Certified Official Transcript of Hearing of February 7, 1986 (filed March 5, 1986) ("Tr. I") at 59–60.

4. The members of the Executive Board of Local 145 prior to the most recent election of officers on December 13 and 14, 1985, were Secretary-Treasurer William Kuba, President Vincent Capocitti, Vice President Kenneth Hunt, Recording Secretary John Heanue and Trustees George Germano, Albert Towles and Kevin O'Toole. Stip. at 2–3.

5. A slate of candidates headed by plaintiff Ferreira defeated a slate of candidates headed by defendant Kuba in the election of December 13 and 14, 1985. The new officers were installed on January 7, 1986. *Id.* at 3.

6. The Executive Board of Local 145 currently consists of Secretary-Treasurer Abel Ferreira, President Paul Keegan, Vice President Robert Benedetto, Recording Secretary Edward McDonald and Trustees George Germano, Albert Towles and Kevin O'Toole. *Id.*

#### The Fund, Its Trustees and Its Administrator

7. The Fund is an employee-benefit plan that provides health and welfare benefits to employees of certain employers that

---

**1.** The plaintiffs have offered no evidence that Lewis Fletcher, who resigned as a trustee at some time prior to November 1985, was served with the complaint naming him as a defendant or otherwise received notice of this action. Accordingly, the court hereby dismisses the complaint against Fletcher without prejudice.

have entered into contracts with Local 145. The Fund operates under the provisions of a trust agreement that took effect in 1955 and was most recently amended in June 1985. *Id.*

8. The plaintiffs Ferreira and Benedetto are covered by the Fund. *Id.* at 6.

9. The general operations of the Fund are entrusted to a four-member Board of Trustees. The trust agreement provides that two members of the Board are to be appointed by Local 145, and two members are to be appointed by the employers who contribute to the Fund. *Id.* at 3.

10. In June 1985, the union representatives on the Board of Trustees were the defendants Kuba and Capocitti, while the employer representatives were the defendant David Gustin and the former defendant Lewis Fletcher. *Id.* Fletcher was subsequently replaced by the defendant Ronald Grey. *See* Certified Official Transcript of Hearing of February 13, 1986 (filed Feb. 27, 1986) ("Tr. II") at 45–47.

11. On June 18, 1985, the Board of Trustees voted to amend the trust agreement to provide that each trustee shall continue to serve until death, incapacity or removal for "proper and just cause only." The agreement previously provided merely that trustees would continue to serve until death, incapacity, resignation or removal. Stip. at 4.

12. None of the defendants remember who proposed the "proper and just cause" provision. *See* Tr. I at 15, 89.

13. The Board of Trustees did not consult with legal counsel before adopting this amendment. Tr. I at 22, 69.

14. The amendment was adopted without any discussion of what would constitute "proper and just cause" for removal of a trustee or what procedures would be used to effect such a removal. *Id.* at 19–20, 35–36, 66, 76, 92, 102–103. For example, defendant Gustin believed that the employers would decide whether there was proper cause for the removal of an employer trustee and that Local 145 would decide whether there was proper cause for the

removal of a union trustee. *Id.* at 19–20, 37–44. However, defendant Kuba believed that a determination as to whether proper cause existed for the removal of a trustee would be made by the Board itself rather than by the employers or the union. *Id.* at 64–68.

15. There is no evidence that the previous absence of a "proper and just cause" removal provision affected the efficient operation of the Fund at any time during the 30 years of its existence.

16. The Board of Trustees appoints an administrator who is responsible for the day-to-day operation of the Fund. Stip. at 3–4.

17. Defendant Kuba has served as unpaid administrator of the Fund since 1980. *Id.* at 4.

18. On November 26, 1985, Trustees Capocitti, Gustin and Grey voted to enter into a contract whereby Kuba would receive a salary as administrator of the Fund if he ceased to receive a salary from Local 145. *Id.* The contract provides that Kuba may be dismissed only for "just cause, after hearing, for a significant breach of his duties as administrator specified in writing." Defendant's Exhibit B (contract attached to minutes of meeting of Nov. 26, 1985).

19. Kuba was present when the contract was discussed and voted on by his fellow trustees. However, he did not vote on the matter. Stip. at 4.

### Efforts to Remove Trustees Kuba and Capocitti

20. On January 13, 1986, the Executive Board of Local 145 voted to remove Kuba and Capocitti as union trustees of the Fund and to replace them with Ferreira and Benedetto. Before the vote was taken, Ferreira stated why he thought there was good cause for the removal of Kuba and Capocitti. *Id.* at 5.

21. The Executive Board sent mailgrams to Kuba, Capocitti and Gustin informing them that Local 145 had removed Kuba and Capocitti as trustees of the Fund

and had designated Ferreira and Benedetto to serve in their places. *Id.*

22. Kuba and Capocitti have refused to relinquish their positions on the Board of Trustees on the ground that they have not been removed pursuant to the terms of the trust agreement. *Id.*

23. The Board of Trustees, in an unsigned letter dated January 15, 1986, and personally delivered to Ferreira by Kuba on January 17, 1986, informed Ferreira that "the Union can designate a Union Trustee only when there is a vacancy under the terms of [Article III of the trust agreement]. No such vacancy exists at this time." *Id.*

24. On February 1, 1986, the Executive Board of Local 145 reaffirmed its decision to remove Kuba and Capocitti as trustees of the Fund and to replace them with Ferreira and Benedetto. Ferreira addressed the Executive Board before this decision concerning the specific facts that he believed to constitute just cause for the removal of Kuba and Capocitti. *Id.* at 5–6.

25. On February 2, 1986, the Executive Board sent mailgrams to Gustin, Grey, Kuba and Capocitti informing them of the outcome of the meeting of February 1, 1986. Additional notification was provided by letters dated February 2, 1986, and February 6, 1986. *Id.* at 6.

26. The plaintiffs have not provided Kuba and Capocitti with any written statement as to the reason or reasons for the vote to replace them as trustees. Kuba and Capocitti have not requested such a statement. *Id.*

27. No hearing to which Kuba and Capocitti were invited has been held with respect to the alleged reasons for the decision to dismiss them as trustees. Kuba and Capocitti have not requested such a hearing. *Id.*

*Relations Between the Kuba and Ferreira Factions*

28. Plaintiff Ferreira unsuccessfully challenged defendant Kuba for control of Local 145 in 1982. Tr. I at 48.

29. The Executive Board of Local 145 subsequently voted to fine Ferreira and to suspend him from the union. *Id.* at 46–47. In a suit filed by Ferreira against Local 145 and four of its officers in response to these actions, United States Circuit Judge Walter R. Mansfield, sitting by designation, found that Kuba had "threatened and sought through use of unreasonable and improper measures to prevent [Ferreira] from exercising his rights as a union members [sic]." *Ferreira v. Local No. 145, et al.*, 633 F.Supp. 133, 135 [2] (D.Conn.1985).

30. Kuba and Capocitti were aware on June 18, 1985, that Ferreira had expressed an intent to run a slate of candidates in the upcoming election of officers for Local 145. Tr. I at 45, 93.

31. The court does not credit the testimony of Kuba and Capocitti that they did not consider the possibility that they might be defeated for re-election as officers of Local 145 at the time that they voted to amend the trust agreement to require that trustees could be removed only for "proper and just cause." Instead, the court finds that Kuba and Capocitti supported the amendment, at least in part, so that they could retain their positions on the Board of Trustees even if they lost their positions in the Local 145 leadership to the rival faction headed by Ferreira.

32. The court likewise does not credit Kuba's testimony that he would have no difficulty cooperating with the new leadership of Local 145.

**2.** The court takes judicial notice of the decision in *Ferreira v. Local 145, et al.*, 633 F.2d 133 (D.Conn.1985), pursuant to Rule 201, Fed.R. Evid. *See United States v. Wilson*, 631 F.2d 118, 119 (9th Cir.1980) (court may take judicial notice of its own records in other cases as well as records of inferior courts); *Baldwin v. Local 843, International Brotherhood of Teamsters*, 562 F.Supp. 36, 38 (D.N.J.1982) (court may take judicial notice of its own records in other cases arising out of same labor dispute).

## CONCLUSIONS OF LAW

### I. The Jurisdictional Challenge Under LMRA

It is appropriate to turn first to the defendants' contention that the court lacks jurisdiction over this action under Section 302 of the LMRA, 29 U.S.C. § 186(c)(5), (e).

█ A federal district court has jurisdiction to consider claims that an employee trust fund has violated the requirements of Section 302(c)(5) of the LMRA, 29 U.S.C. § 186 (c)(5),[3] by failing to operate for "the sole and exclusive benefit of the employees" or to provide for equal representation of employers and employees in the administration of the fund. *See* 29 U.S.C. § 186(e).[4]

Indeed, the Supreme Court has found it "clear that compliance with the specific standards of § 302(c)(5) in the administration of welfare funds is enforceable in federal district courts under § 302(e) of the LMRA." *UMWA Health & Retirement Funds v. Robinson*, 455 U.S. 562, 573 n. 12, 102 S.Ct. 1226, 1233 n. 12, 71 L.Ed.2d 419 (1982), *citing Arroyo v. United States*, 359 U.S. 419, 426–427, 79 S.Ct. 864, 868–69, 3 L.Ed.2d 915 (1959). Our Court of Appeals has likewise held that

"a federal court does have jurisdiction under [Section 302(e)] to enforce a trust fund's compliance with the statutory standards set forth in subsection (c)(5) by eliminating those offensive features in the structure or operation of the trust that would cause it to fail to qualify for a (c)(5) exception."

*Local 50, Bakery & Confectionery Workers Union, AFL–CIO, Trust Fund v. Local 3, Bakery & Confectionery Workers Union, AFL–CIO, Trust Fund*, 733 F.2d 229, 234 (2d Cir.1984), *quoting Associated Contractors v. Laborers International Union*, 559 F.2d 222, 225 (3d Cir.1977). *See also Valle v. Joint Plumbing Industry Board*, 623 F.2d 196, 201 n. 8 (2d Cir.1980) (Section 302(e) "grants federal courts jurisdiction to remedy 'structural' defects in pension plans established pursuant to Section 302(c)(5)").

█ It is undisputed that the Fund is subject to the restrictions of Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). Payments made to the Fund by an employer are therefore exempt from the criminal prohibitions of 29 U.S.C. § 186 only if the Fund complies with the structural requirements of that section. One of these requirements is that "employees and employers are equally represented in the

**3.** Section 302(c)(5) provides, in pertinent part, that the prohibition on payments by employers to labor organizations and their agents is not applicable to contributions to trust funds established

> for the sole and exclusive benefit of the employees of such employer, and their families and dependents ... Provided, That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and *employees and employers are equally represented in the administration of such fund,* together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon and

> in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in the event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement[.]

29 U.S.C. § 186(c)(5) (emphasis added).

**4.** Section 302(e), 29 U.S.C. § 186(e), provides, in pertinent part, that "[t]he district courts of the United States ... shall have jurisdiction, for cause shown, ... to restrain violations of this section."

administration of such fund." 29 U.S.C. § 186(c)(5).

■ The plaintiffs contend that this "equal representation" requirement was violated by the defendants' attempt to restrict the authority of Local 145 to remove its representatives from the Board of Trustees of the Fund. It cannot be said that such allegations are so "wholly insubstantial and frivolous," *Bell v. Hood,* 327 U.S. 678, 682–683, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946), as to deprive the court of jurisdiction over this action pursuant to 29 U.S.C. § 186(e). *See Lugo v. Employees Retirement Fund of the Illumination Products Industry,* 529 F.2d 251, 256 (2d Cir.) (Feinberg, J.), *cert. denied,* 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976) ("[i]t is not necessary for us … to agree with plaintiff's interpretation [of the 'sole and exclusive benefit' of the employees requirement of Section 302(c)(5) ] in order to have jurisdiction to decide the case; so long as plaintiff's claim that the section has been violated is not 'wholly insubstantial and frivolous' … jurisdiction exists") (citations omitted).

Accordingly, the court must reject the defendants' challenge to its jurisdiction over the plaintiffs' LMRA claims.

## II. Plaintiffs' Standing Under ERISA

The court turns now to the defendants' contention that the plaintiffs lack standing to assert a claim under ERISA for violation of fiduciary obligations.

The plaintiffs concede that "there are serious questions as to the standing of unions to bring ERISA claims for breaches of fiduciary duties," Plaintiffs' Post-Hearing Memorandum of Law (filed Feb. 28, 1986) at 13, *see also District 65, UAW v. Harper & Row Publishers, Inc.,* 576 F.Supp. 1468, 1476 (S.D.N.Y.1983) (holding that union has no standing to assert claims

under ERISA), and therefore are not pressing any ERISA claims by Local 145. Consequently, the court need not reach the question of the union's standing under ERISA.

It is clear that "a participant, beneficiary, or fiduciary" of an ERISA plan has standing under 29 U.S.C. § 1132(a)(3) to bring an action "to enjoin any act or practice which violates," *inter alia,* the fiduciary obligations of 29 U.S.C. § 1104. A fiduciary is required by 29 U.S.C. § 1104(a) to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

■ Accordingly, the individual plaintiffs Ferreira and Benedetto, as "participants" in the Fund, *see* 29 U.S.C. § 1002(7) (defining "participant" as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization"), have standing to bring an action alleging that the defendants breached the fiduciary obligations imposed upon them by ERISA to administer the Fund prudently and solely in the interest of participants and beneficiaries.[5]

## III. Plaintiffs' Claims Under LMRA

■ A federal district court, in considering allegations that a regulation adopted by plan trustees violates the "structural" requirements of Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5), "has the pow-

---

**5.** A different result is not suggested by *Rosenthal v. Ann Service Corporation,* 571 F.Supp. 1229 (S.D.N.Y.1983), a case relied upon the defendants, which barred a trustee of an ERISA plan from bringing a claim against non-fiduciaries "without receiving the approval of his co-trustees or even formally presenting to them the grievances that underlie this action." *Id.* at 1232. The concerns for circumvention of the LMRA's "equal representation" requirement that motivated the court in *Rosenthal v. Ann Service Corporation* are absent from an action brought by individuals who have not been permitted to serve as trustees of the Fund.

er to examine the regulation, its purposes and effects, and determine whether it is arbitrary or unreasonable, or—to restate the proposition—whether the regulation is devoid of any 'rational nexus or relationship to the requirements of Section 302(c)(5).' " *Nixon v. O'Callaghan*, 392 F.Supp. 1081, 1085 (S.D.N.Y.1975), *quoting Lugo v. Employees Retirement Fund of the Illumination Products Industry*, 366 F.Supp. 99, 103 (E.D.N.Y.1973), *aff'd*, 529 F.2d 251 (2d Cir.), *cert. denied*, 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976). Accordingly, the court must overturn the instant regulation if, as the plaintiffs contend, it not only has no "rational nexus" to the requirements of Section 302(c)(5) but actually frustrates those requirements.

The Supreme Court has recognized that Congress provided in Section 302(c)(5) for equal representation of employers and employees so that the power of one group would check and balance the power of the other in the administration of employee benefit funds. *See National Labor Relations Board v. Amax Coal Company*, 453 U.S. 322, 330, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672 (1981) (observing that "[t]he requirement that employer and employee be equally represented among the trustees of an employee benefit fund prevents any misuse of those funds by union officers who would otherwise have sole control of vast amounts of money contributed by the employer"). *See also Associated Contractors v. Laborers International Union*, 559 F.2d 222, 228 (3d Cir.1977) ("Congress envisioned the conflict of views of employer and employee [trustees] as a distilling process which would provide safeguards against trust fund corruption").

■ The Court of Appeals in *Associated Contractors v. Laborers International Union, supra*, 559 F.2d at 227, recognized that, because "Section 302 is designed to prevent future misconduct, not merely to remedy past misdeeds," the mere "potential of abuse" is sufficient to defeat a challenged provision "[e]ven if the union's [or, presumably, the employer's] conduct thus far has been irreproachable." This court

holds that the instant regulation clearly poses sufficient "potential of abuse" to render it unenforceable under Section 302.

For example, a faction that lost control of a union local in a bitter struggle might bear greater animosity toward the faction that replaced it than toward the employer; indeed, the defeated faction might even seek to ingratiate itself with the employer as part of its effort to regain control of the union. A trustee who was affiliated with the defeated faction might be less than diligent in checking abuses of power by an employer trustee. Yet, according to the rule adopted by the defendants, the union trustee could not be removed from office until after it was proved that he had engaged in conduct tantamount to a breach of fiduciary duty; indeed, under the interpretation of the rule offered by defendant Kuba, the trustee could be removed even in this situation only by a majority vote of the remaining trustees. *See* Tr. I at 64–68.

It is not enough to argue that no such "potential of abuse" exists in these circumstances because both the union trustee and the employer trustee could be held liable for breach of fiduciary duty. The "equal representation" requirement of Section 302(c)(5) was designed to be a prophylactic rule that would check abuses of trust before they could occur and possibly jeopardize the benefits of plan participants. Furthermore, there is no assurance that any such abuses of trust would come to the attention of those who would be in a position either to remove the trustee from office or to bring an action for breach of fiduciary duty. In sum, the "checks and balances" that Congress sought to write into Section 302(c)(5) could be undermined, and "the conflict of views of employer and employee ... which would provide safeguards against trust fund corruption" could be stilled, if employers and unions could not remove at will any of their trustees in whom they lacked confidence without having to demonstrate "proper and just cause" for such removal.

The challenged amendment, aside from being inconsistent with the "equal repre-

sentation" requirement of Section 302(c)(5), is also "devoid of any 'rational nexus or relationship to [any of the other] requirements of Section 302(c)(5).'" *Nixon v. O'Callaghan, supra,* 392 F.Supp. at 1085. Moreover, there is no indication that the amendment is necessary, as the defendants contend, to provide for "continuity in the administration of the trust fund." Tr. I at 17. It appears unlikely that either the employees or the employers would, in the absence of the rule, continually alter the membership of the Board in a manner threatening to the stability of the Fund. The ability of the Board of Trustees to hire an administrator to oversee the day-to-day operations of the Fund offers further assurance that any necessary continuity of leadership will be maintained.

Accordingly, the court holds that the provision of the trust agreement requiring "proper and just cause" for the removal of a trustee violates Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5), and is therefore unenforceable.

### IV. Plaintiffs' Claims Under ERISA

The defendants, as trustees of an ERISA plan, were required by 29 U.S.C. § 1104(a)(1)(B) to "discharge [their] duties with respect to [the Fund] ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." Our Court of Appeals has observed that, in actions alleging a breach of fiduciary duty under ERISA, that

> [p]rudence is measured according to the objective "prudent person" standard developed in the common law of trusts.... A trustee's lack of familiarity with investments is no excuse: under an objective standard trustees are to be judged "according to the standards of others acting in a like capacity and familiar with such matters.'"

*Katsaros v. Cody,* 744 F.2d 270, 279 (2d Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984), *quoting Mar-*

*shall v. Glass/Metal Association,* 507 F.Supp. 378, 384 (D.Hawaii 1980). *Cf. Hanson Trust PLC v. ML SCM Acquisition, Inc.,* 781 F.2d 264, 274–275 (2d Cir. 1986) (corporate directors may violate duty of care by "failing reasonably to obtain material information or to make a reasonable inquiry into material matters").

■ Furthermore, the courts have recognized that the trustees of an ERISA plan must be held to a heightened standard of care in situations in which they have dual loyalties. *See, e.g., Donovan v. Bierwirth,* 538 F.Supp. 463, 470 (E.D.N.Y.1981), *modified on other grounds,* 680 F.2d 263 (2d Cir.), *cert. denied,* 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982) ("when a fiduciary has dual loyalties, his independent investigation into the basis for an investment decision which presents a potential conflict of interests must be both intensive and scrupulous and must be discharged with the greatest degree of care that could be expected under all the circumstances by reasonable beneficiaries and participants of the plan"). The defendants may properly be held to a heightened standard of care in the instant circumstances because the adoption of the "proper and just cause" provision served to insulate their own positions on the Board of Trustees.

A "prudent person" in the defendants' position would have understood that employee-benefit plans are subject to a number of restrictions under the LMRA, ERISA and the Internal Revenue Code and that violation of these restrictions could jeopardize the benefits of plan participants. For example, a violation of the structural requirements of Section 302(c)(5) of the LMRA carries a maximum possible penalty of a $10,000 fine and imprisonment for as much as one year. *See* 29 U.S.C. § 186(d). A "prudent person" would therefore have sought the advice of counsel with respect to any substantive revision of the legal instruments governing an ERISA plan.

■ However, the defendants concede that the Fund's legal counsel was not consulted prior to the adoption of the "proper and just cause" requirement for the re-

placement of trustees. They have offered no explanation for their failure to do so. Accordingly, the court holds that the defendants Kuba, Capocitti and Gustin, all of whom were members of the Board of Trustees at the time that the requirement was adopted and all of whose tenure as trustees was potentially affected by the amendment, violated 29 U.S.C. § 1104(a)(1)(B) by failing to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." [6]

■ Furthermore, the court concludes that the defendants Kuba and Capocitti, by supporting the "proper and just cause" amendment so that they could retain their positions on the Board of Trustees even if they lost their positions in the Local 145 leadership, *see* Findings of Fact, *supra*, at ¶ 31, failed to "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries" as required by 29 U.S.C. § 1104(a)(1). *See Donovan v. Bierwirth, supra*, 680 F.2d at 271 (the "exclusive purpose" rule requires trustees to make all decisions with an "eye single to the interests of the participants and beneficiaries."). However, the plaintiffs have not offered sufficient evidence that the defendant Gustin's support of the amendment was motivated by anything other than the interests of the Fund's participants and beneficiaries.

### V. Plaintiffs' Power to Remove Union Trustees

■ The defendants contend that, even if the "proper and just cause" provision is deemed unenforceable, the replacement of the union trustees requires a vote of the membership of Local 145 rather than merely of the Executive Board. This argument ignores the Executive Board's undisputed power under the constitution and bylaws of Local 145 to "conduct and manage the affairs of" the local union, to "[c]reate trusts, terminate and effectuate the same," and to "[d]o all acts, whether or not expressly authorized herein, which the Board may deem necessary or proper for the protection of the property of the local and for the benefit of the organization and members." Plaintiffs' Exhibit 7 (Local 145 Constitution and Bylaws at 14–16).

The defendants have failed to point to any provision of the constitution and bylaws or the trust agreement that expressly requires a vote of the Local 145 membership in order to replace a union trustee. There is no indication in the testimony of defendants Kuba and Capocitti that union trustees have ever been selected by a vote of the union membership. *See, e.g.*, Tr. I at 43 (Kuba states that he became a trustee because he "was designated" after the retirement of a union trustee); *id.* at 52 (Kuba states that he originally opposed the "proper and just cause" provision because "I felt that a change ... would limit my ability if I had so sought to change the trustee").

Accordingly, the defendants' argument that the union trustees cannot be replaced without a vote of the Local 145 membership must be rejected.

### VI. Attorneys' Fees

The parties agree that the factors to be considered by the court in considering an application for attorneys' fees under ERISA, 29 U.S.C. § 1132(g)(1),[7] are:

1. The degree of the offending party's culpability or bad faith;

---

**6.** The court holds that defendant Grey, who did not become a trustee until November 1985, did not breach any fiduciary duty with respect to the adoption of the "proper and just cause" provision. It would be unreasonable in the circumstances of this case and on the basis of the record before the court to require Gray to have investigated the adoption of the provision at the time that he became a trustee.

**7.** Section 1132(g)(1) provides that "[i]n any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."

2. The ability of the offending party to satisfy an award of attorneys fees;

3. Whether an award of attorneys fees would deter others from acting similarly under like circumstances;

4. The relative merits of the parties' positions; and

5. Whether the parties requesting attorneys fees sought to confer a common benefit on an ERISA plan's participants and beneficiaries.

*Miles v. New York State Teamsters Conference Pension and Retirement Fund,* 698 F.2d 593, 602 n. 9 (2d Cir.), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983); *Ford v. New York Central Teamsters Pension Fund,* 506 F.Supp. 180, 183 (W.D.N.Y.1980), *aff'd,* 642 F.2d 664 (2d Cir.1981).

The court will defer consideration of the plaintiffs' application of attorneys' fees pending the submission by the plaintiffs and by the defendants Kuba, Capocitti and Gustin of supplemental memoranda of law and supporting affidavits addressing each of the five criteria listed above.[8] These materials shall be submitted by no later than April 11, 1986. The plaintiffs shall include a statement of the amount of the attorneys' fees that they are seeking in this action; the defendants shall include information concerning their ability to satisfy an award of attorneys' fees by insurance or otherwise.

### Conclusion

For the reasons stated above, the court finds that the June 18, 1985, amendment to the trust agreement, which provided that trustees could be removed for "proper and just cause only," is invalid under § 302(c)(5) of the LMRA because it violates the requirement that employees and employers be "equally represented" in the administration of such trust funds.

---

8. It appears to the court that the defendants Kuba, Capocitti and Gustin may have conflicting interests with respect to the issue of attorneys' fees and therefore may wish to retain separate counsel for this portion of the proceedings. The court intimates no criticism of the

In addition, the court holds that the defendants Kuba, Capocitti and Gustin breached their fiduciary duty of due care under ERISA by adopting the amendment without consulting legal counsel.

The court also holds that the defendants Kuba and Capocitti breached their duty under ERISA to discharge their obligations as trustees "solely in the interests of the participants and beneficiaries" of the Fund.

A decision on the plaintiffs' application for attorneys' fees under ERISA is deferred pending the receipt of supplemental materials from the parties by no later than April 11, 1986.

A judgment of permanent injunction against the enforcement of the amendment shall enter against the defendants in accordance with this memorandum of decision. Accordingly, Local 145 is free to replace the union representatives on the Board of Trustees at will.

It is so ordered.

---

defendants' able counsel, who suggested at two earlier hearings that separate representation of the defendants might later become appropriate, and no view as to the merits of the application for attorneys' fees.