**MOBILE, ALABAMA–PENSACOLA, FLORIDA BUILDING AND CONSTRUCTION TRADES COUNCIL, et al., Plaintiffs,**

v.

**Carroll DAUGHERTY, et al., Defendants.**

Civ. A. No. 87–0353–AH.

United States District Court, S.D. Alabama, S.D.

April 18, 1988.

Roderick Stout and Richard Wright, Mobile, Ala., for plaintiffs.

Donald M. Briskman, Mobile, Ala., for defendants Daugherty, Lowe and Reeves.

Paul D. Myrick, Mobile, Ala., for defendants A.F. of L.–A.G.C. Building Trades Pension Plan and Trust Fund and the A.F. of L.–A.G.C. Building Trades Welfare Plan and Trust Fund.

## ORDER

HOWARD, District Judge.

This matter is before the Court on the plaintiffs' Motion for Summary Judgment (# 16). Although the motion involves Count One only (of the three-count complaint), a grant of the motion would render Counts Two and Three moot, and, thus, dispose of the entire case. For the reasons set forth below, the Court is of the opinion that said motion for summary judgment is due to be, and hereby is, GRANTED.

## FINDINGS OF FACT

1. The AFL–AGC Building Trades Pension Plan (the Pension Plan) was established in 1965 pursuant to the terms of collective bargaining agreements between local chapters of various unions comprising the Mobile, Alabama–Pensacola, Florida Building and Construction Trades Council (the Unions) and various employers comprising the Mobile Chapter, Associated General Contractors of America, Inc. (the Employers).

2. The AFL–AGC Building Trades Welfare Plan (the Welfare Plan) was established in 1953 pursuant to the terms of collective bargaining agreements between the Unions and the Employers.

3. The Welfare Plan as adopted on July 1, 1953, contains the following key provisions:

*Art. IV, 4.2 Initial and Successor Trustees.*

. . . .

(b) All Trustees shall be appointed to serve for the duration of this Trust.

(c) Each Trustee shall continue to serve as such until the expiration of his term of office, or until his death, incapacity, resignation or removal as herein provided.

. . . .

(e) A Trustee can be removed for malfeasance in the execution of his Trust. Any Employer or Union may initiate charges of malfeasance against a Trustee by filing such charges with the Employers and with the Union and with the Trustees. Such charges shall be referred by the Trustees to a Board of Inquiry which shall consist of an equal number of members appointed by the Employers and the Union. The members so appointed shall attempt to agree upon an additional member to act as impartial chairman and, if within a period of five days an impartial chairman is not agreed upon, then application by the Trustees shall be made to the Judge of the United States District Court for the Southern District of Alabama for the appointment of an impartial chairman. All records and other information available to the Trustees shall be made available to the Board of Inquiry. If a majority of said Board of Inquiry finds that a Trustee has been guilty of malfeasance, he shall be removed and may not thereafter be eligible to serve as a Trustee. All expenses incident to the Board of Inquiry shall be a proper charge against the Fund and the Trustees are authorized and directed to pay such expense, including the fees, if any, of the members of the Board.

. . . .

(g) It is the intention hereof that the Plan and Trust shall at all times be administered by an equal number of Employer Trustees and Union Trustees....

. . . .

(k) Initial and successor Employer Trustees shall be appointed by the Associated General Contractors, Mobile Branch. Initial and successor Union Trustees shall be appointed by the Union.

4. The Welfare Plan as amended and adopted on April 1, 1985, contains the following key provisions:

PREAMBLE

. . . .

... The purpose of this amendment is ... (iii) to update compliance with the Labor Management Relations Act of 1947, as amended, the Internal Revenue Code and the Employee Retirement Income Security Act of 1974, as amended.

Art. V TRUSTEES

*5.1 Union and Employer Trustees.*

The Plan shall be administered by an equal number of Employer Trustees and Union Trustees (collectively Trustees). Employer Trustees shall be appointed by the AGC. Union Trustees shall be appointed by the Building Trades Council. Unless a Trustee is removed, dies or resigns, the current Trustees shall continue as Trustees under the Plan, as amended and restated.

. . . .

*5.3 Term of Trustees.*

Each Trustee shall continue to serve until death, resignation or removal.

.1 A Trustee may resign and thereby be discharged from his duties under the Plan by giving thirty (30) days (or such shorter time as the remaining Trustees may accept) prior written notice to the other Trustees. The notice shall state the effective date of the resignation. If a successor Trustee is appointed before the effective date specified in the notice, the resignation shall become effective on the effective date of such appointment.

.2 A Trustee shall automatically be removed from office upon conviction of a felony. A Trustee may be removed for (i) misfeasance, malfeasance or nonfeasance in the execution of the trust or (ii) if the Trustee is physically or mentally unable properly to perform Trustees' duties. An Employer, a Un-

ion or the other Trustees may request removal of a Trustee on those grounds by delivering a written request to the Trustees. The request shall state with particularity the grounds for removal and the actions or inactions deemed sufficient to support the stated ground. The Trustees shall promptly notify the AGC and the Building Trades Council, who shall appoint a Board of Inquiry to decide the request. The Board members shall be appointed within ten (10) days after receipt of the notice from by [sic] the Trustees. The Board shall consist of six members, three appointed by the AGC and three appointed by the Building Trades Council. Members of the Board of Inquiry shall have judicial immunity from any claim arising out of the performance of their duties as Board members. The Board shall promptly convene and attempt to agree upon one additional member to act as chairman. If the AGC or the Building Trades Council, or both, do not timely appoint the Board members or, if within five (5) days after their appointment the six appointed members of the Board cannot agree upon one additional member to act as chairman, the remaining Trustees shall petition the United States District Court for the Southern District of Alabama, Southern Division, to make the necessary appointment(s)....

## Art. XI  AMENDMENT OF THE PLAN

. . . .

*11.2  Limitation on Right to Change the Plan.*

... the Trustees may make any changes in the Plan (i) that are required to comply with law ...

## Art. XIII  MISCELLANEOUS

*12.1  Severability.*

This Plan is established and adopted by the Trustees with the intent that it comply with the ERISA, LMRA and other applicable laws....

5. The Pension Plan as adopted on July 1, 1965, contains the following key provisions:

## Art. IV  TRUSTEES

*4.1  Responsibility.*

The Fund shall be administered by six (6) Trustees, three (3) of whom shall be designated as "Employer Trustees", and three (3) of whom shall be designated as "Union Trustees".

*4.2  Initial and Successor Trustees.*

. . . .

(b) All Trustees shall be appointed to serve for the duration of this Trust.

(c) Each Trustee shall continue to serve as such until the expiration of his term of office, or until his death, incapacity, resignation or removal herein provided.

. . . .

(e) A Trustee can be removed for malfeasance in the execution of his Trust. Any Employer or Union may initiate charges of malfeasance against a Trustee by filing such charges with the Employers and with the Union and with the Trustees. Such charges shall be referred by the Trustees to a Board of Inquiry which shall consist of an equal number of members appointed by the Employers and the Union. The members so appointed shall attempt to agree upon an additional member to act as impartial chairman and, if within a period of five (5) days an impartial chairman is not agreed upon, then application by the Trustees shall be made to the Judge of the United States District Court for the Southern District of Alabama for the appointment of an impartial chairman. All records and other information available to the Trustees shall be made available to the Board of Inquiry. If a majority of said Board of Inquiry finds that a Trustee has been guilty of malfeasance, he shall be removed and may not thereafter be eligible to serve as a Trustee. All expenses incident to the Board of Inquiry shall be a proper charge against the Fund and the Trustees are authorized and directed to pay such expense including fees, if any, of the members of the Board.

(f) In case any Trustee shall die or become incapable of acting hereunder, shall

resign or be removed before the expiration of the term for which he was appointed, a successor Trustee shall be appointed for the unexpired term.

(g) It is the intention hereof that the Plan and Trust shall at all times be administered by an equal number of Employer Trustees and Union Trustees ...

. . . .

(i) A Trustee may be removed for violation of his fiduciary obligations under the Trust Agreement or for other good legal grounds by action in a court of appropriate jurisdiction initiated by any two (2) Trustees or by the party which appointed the Trustees.

. . . .

(k) Initial and successor Employer Trustees shall be appointed by action of the Associated General Contractors of America, Inc. Mobile Section of the Alabama Branch (herein referred to as "A.G.C."). Initial and successor Union Trustees shall be appointed by action of the Mobile Building and Construction Trades Council (herein referred to as "Trades Council").

6. The Pension Plan as amended and adopted January 1, 1986, contains the following key provisions:

PREAMBLE

. . . .

The Trustees now amend and entirely restate the Plan to update the description of the Plan and to comply with the Internal Revenue Code, as amended, and the Employee Retirement Income Security Act of 1974, as amended.

Art. X  TRUSTEES

10.1 *Union and Employer Trustees.* The Plan shall be administered by an equal number of Employer Trustees and Union Trustees (collectively Trustees). Employer Trustees shall be appointed by those Employers in the AGC. Union Trustees shall be appointed by the Mobile–Pensacola Building and Construction Trades Council. Unless a current Trustee is removed, dies or resigns, the current Trustees shall continue as Trustees under the Plan, as amended and restated.

. . . .

10.3 *Term of Trustees.* Each Trustee shall continue to serve until death, resignation or removal....

. . . .

.2 *Removal.* A Trustee shall automatically be removed from office upon conviction of a felony. A Trustee may be removed (i) for breach of fiduciary duty or other malfeasance, misfeasance or nonfeasance in the execution of the trust or (ii) if the Trustee is physically or mentally unable to perform properly Trustees' duties. An Employer, a Union or another Trustee may request removal of a Trustee *on those grounds* by delivering a written request to the Trustees. The request shall (i) state with particularity the grounds for removal and the actions or inactions deemed sufficient to support each stated ground and (ii) agree to pay all expenses incident to the removal process *if* the Board of Inquiry determines that the process was initiated in bad faith and without good grounds to support removal. The Trustees shall promptly notify the AGC and the Building Trades Council, who shall appoint a Board of Inquiry to decide the request. The Board members shall be appointed within ten (10) days after the Trustees receive the notice. The Board shall consist of six members, three appointed by the AGC and three appointed by the Building Trades Council. The Board shall promptly convene and shall appoint one additional member to act as chairman. If the AGC of the Building Trades Council, or both, do not timely appoint the Board members or, if within five (5) days after their appointment the six appointed Board members cannot agree upon one additional member to act as chairman, the remaining Trustees shall petition the United States District Court for the Southern District of Alabama, Southern Division, to make the necessary appointment(s)....

. . . .

Art. XVIII MISCELLANEOUS

. . . .

18.2 *Severability*. This Plan is established and adopted by the Trustees with the intent that it comply with the Internal Revenue Code, ERISA, LMRA and other applicable laws. . . .

7. The three individual defendants in this action have served as trustees of both Plans for many years. Carroll Daugherty has held the position of Union Trustee on each Plan since 1978. Robert Lowe has held the position of Union Trustee on the Welfare Plan since 1963 and on the Pension Plan since 1965. J.C. Reeves has held the position of Union Trustee on each Plan since 1966. In addition, Carroll Daugherty has been the salaried administrator of each Plan since 1978. (Complaint, p. 5).

8. On March 31, 1987, the Trades Council (representing the Unions), voted to demand the resignation of defendants Daugherty, Lowe, and Reeves as Union Trustees. At the same time the Trades Council elected plaintiffs Ray Helton, Terrance Lang, and Gordon Pennington as successor Union Trustees. Although notified of said election results and requested to resign, the defendants Daugherty, Lowe, and Reeves disputed the validity of said election and refused to resign their positions as Union Trustees. (Complaint, pp. 3–4, ¶ 6).

## CONCLUSIONS OF LAW

1. The AFL–AGC Building Trades Pension Plan is an employee benefit plan within the meaning of the Employee Retirement Income Security Act [ERISA], 29 U.S.C. § 1002(2). It is subject to coverage under ERISA pursuant to 29 U.S.C. § 1003.

2. The AFL–AGC Building Trades Welfare Plan is an employee benefit plan within the meaning of ERISA, 29 U.S.C. § 1002(1). It is subject to coverage under ERISA pursuant to 29 U.S.C. § 1003.

3. The defendant union trustees (Carroll Daugherty, Robert Lowe, and J. C. Reeves) of the Pension Plan and Welfare Plan are fiduciaries with respect to the Plans within the meaning of 29 U.S.C. § 1002(21)(A).

4. The plaintiffs Ray Helton, Terrance Lang, Gordon Pennington, Joseph Paulus, O. W. Crisco, James Evans, Fred Johnson, Michael H. Tindal, F. D. Stringfellow, Al Brigan, Ace Jackson, and Jerry Burnthorne have standing to bring this action as participants. 29 U.S.C. § 1132(a)(3). Plaintiff Mobile, Alabama–Pensacola, Florida Building and Construction Trades Council has standing to bring this action as a fiduciary. 29 U.S.C. § 1132(a)(3). The Trades Council is a fiduciary of the Plans to the extent it selects, and has certain authority to seek removal of, union trustees. In *Leigh v. Engle*, 727 F.2d 113 (7th Cir.1984), the Seventh Circuit held that "ERISA ties fiduciary responsibilities to a person's actual authority . . ." *Leigh*, 727 F.2d at 133. The court determined that the persons in question were "fiduciaries to the extent that they performed fiduciary functions in selecting and retaining plan administrators." *Id.* Further, "ERISA recognizes that a person may be a fiduciary for some purposes and not others." *Id.* The Seventh Circuit based its holding on ERISA Interpretative Bulletin 75–8, 29 C.F.R. § 2509.75–8(D–4) (1983), which states in part:

D–4 Q: In the case of a plan established and maintained by an employer, are members of the board of directors of the employer fiduciaries with respect to the plan?

A: Members of the board of directors of an employer which maintains an employee benefit plan will be fiduciaries only to the extent that they have responsibility for the functions described in section 3(21)(A) of the Act. For example, the board of directors may be responsible for the selection and retention of plan fiduciaries. In such a case, members of the board of directors exercise "discretionary authority or discretionary control respecting management of such plan" and are, therefore, fiduciaries with respect to the plan. *However, their responsibility, and consequently, their liability, is limited to the selection and*

*retention of fiduciaries* (apart from co-fiduciary liability arising under circumstances described in section 405(a) of the Act).

*Leigh,* 727 F.2d at 133–34 (emphasis in the original). *See also, Gelardi v. Pertec Computer Corp.,* 761 F.2d 1323, 1325 (9th Cir.1985).

For the same reason, the individual plaintiffs named in their capacity as business agents of their respective local unions also serve in a fiduciary capacity to the Plans since they as delegates to the Trades Council can vote to select or seek removal of Union Trustees.

5. Jurisdiction and venue are proper under 29 U.S.C. § 1132(e)(1) and (2), 29 U.S.C. § 1451, and 29 U.S.C. § 186(e).

6. The provisions of ERISA are "to be interpreted both in the light of the common law of trusts, as well as with a view toward the special nature, purpose, and importance of modern employee benefit plans." *Marshall v. Glass/Metal Association and Glaziers and Glass-workers Pension Plan,* 507 F.Supp. 378, 383 (D.Hawaii 1980). *Accord, Marshall v. Teamsters Local 282 Pension Trust Fund,* 458 F.Supp 986, 990 and n. 8 (EDNY 1978).

7. Congress enacted ERISA in 1974. 29 U.S.C. §§ 1001 *et seq.* In so doing, "Congress 'intended that a body of Federal substantive law would be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans.'" *Amato v. Bernard,* 618 F.2d 559, 567 (9th Cir.1980) (quoting 120 Cong.Rec. 29942 (1974) (remarks of Sen. Javits)). Two of ERISA's many purposes "are the protection of the interests of participants and beneficiaries of pension and welfare benefit plans and preservation of the integrity of plan assets." *Marshall v. Glass/Metal Association and Glaziers and Glassworkers Pension Plan,* 507 F.Supp. at 383 (citing *Eaves v. Penn,* 587 F.2d 453, 457 (10th Cir.1978) (other citation omitted)).

8. 29 U.S.C. § 1002(7) provides that

The term "participant" means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

9. 29 U.S.C. § 1002(14) provides in part that

The term "party in interest" means, as to an employee benefit plan—

(A) any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such employee benefit plan;

(B) a person providing services to such plan;

(C) an employer any of whose employees are covered by such plan;

(D) an employee organization any of whose members are covered by such plan;

. . . .

10. 29 U.S.C. § 1002(21) provides in part that

(A) . . . . a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

11. 29 U.S.C. § 1104(a)(1)(A) and (B) provide in part

(1) . . . a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

12. The plaintiffs seek a declaratory judgment regarding the legality (in light of the requirements of ERISA and LMRA) of the present lifetime tenure provisions for Union Trustees under both Plans. The plaintiffs argue that

"[t]he Pension Trust Agreement and Welfare Plan Agreement provide Union Trustees a lifetime appointment and allow for their removal only in limited and qualified circumstances. There is no provisions for a term of office of a specified number of years. Lifetime trustee tenure violates the fiduciary standards of ERISA by negating the requirement that trustees be responsive and accountable to the plans' participants. It allows trustees to become involved in arrangements and relationships which may be disadvantageous to the participants and allows for no orderly mechanism for the change of trustees absent death, resignation, or proof of specific acts of misconduct".

The Court agrees.

13. The plaintiffs further assert that "ERISA requires the Trades Council have a procedure to appoint new trustees for a specific and reasonable term of years without the necessity of proving specific acts of misconduct."

Again, the Court agrees.

14. In 1985, the United States Department of Labor [DOL] addressed a "request for an advisory opinion under the fiduciary responsibility provisions of the Employee Retirement Income Security Act of 1974 (ERISA) concerning the term of appointment for a union-designated trustee of the Plan." The plan in question provided for a trustee's appointment for life, in the ab-

sence of fiduciary misfeasance, the same scenario which this Court faces. Given the importance of the DOL's response, the Court quotes it substantially:

The fiduciary responsibility provisions of title I of ERISA do not specifically address the term of office of a plan trustee. However, *the Department is generally of the view that a lifetime term of appointment for a pension fund trustee would be inconsistent with ERISA's fiduciary responsibility provisions.* In enacting those provisions, Congress concluded that employee benefit plans should be administered in accordance with high standards of loyalty and prudence and that the conduct of fiduciaries should be subject to effective oversight on behalf of plan participants and beneficiaries. These broad objectives are underpinned by prohibited transaction rules which, among other things, permit fiduciary and other services to be provided to a plan only under contracts or arrangements that are reasonable. In this regard, Congress indicated in the Conference Report on ERISA that they expected that service arrangements with parties in interest, including fiduciaries, would allow the plan to terminate the services on reasonably short notice under the circumstances so the plan would not become locked into an arrangement that may become disadvantageous. (H.R. Rep. No. 93–1280, at 312).

*The Department believes the principles outlined above may be frustrated where a plan sponsor that appoints a trustee can appoint a successor trustee only upon successfully bringing such charges as misfeasance or incapacity to perform the duties of the position.* Under section 404(a)(1)(D) of ERISA, fiduciaries are required to act in accordance with the plan documents and instruments, but only insofar as they are consistent with titles I and IV of ERISA. Thus, in the Department's view, the fiduciaries of a plan cannot lawfully rely upon a plan provision to the extent it would purport to establish a trustee's term of appointment as lifetime.

*We do not intend to suggest that trustees should serve only at will. Limited terms, such as for a specified number of years, that are reasonable under the facts and circumstances of the plan generally would be consistent with ERISA.*

Finally, it should be noted that this letter addresses only the fiduciary responsibility provisions of title I of ERISA. *We offer no comments regarding any other law, including section 302(c) of the Labor Management Relations Act, 1947.* This letter is an advisory opinion under ERISA Procedure 76–1. Section 10 of the Procedure describes the effect of advisory opinions.

Pension & Welfare Benefits Opinion Letter 85–41A, December 5, 1985, Department of Labor (emphasis added).

15. As the United States Supreme Court has noted, "Considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations 'has been consistently followed by this Court. ...'" *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) (quoting *United States v. Shimer,* 367 U.S. 374, 382, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961).

16. Because "the Secretary of Labor is charged with primary responsibility for administering the fiduciary responsibility provisions of ERISA, his interpretation of this statute must be accorded considerable deference." *Holcomb v. United Automotive Association of St. Louis, Inc.,* 658 F.Supp. 84, 86 (ED MO 1987) (citing *Chevron U.S.A.,* 467 U.S. at 844, 104 S.Ct. at 2782).

17. The Plans in question are governed by ERISA and the LMRA. Indeed, the Plans specifically state that they are to conform to the provisions of these Acts. Both the initial Pension Plan and the Pension Plan as amended in 1986 provide for lifetime appointment tenures for the trustees. The 1965 Pension Plan provided that the trustee "shall continue to serve as such until the expiration of his term of office [which is "duration of this Trust" Art. *IV,* 4.2(b) ], or until his death, incapacity, resignation or removal herein provided [the 1965 Pension Plan provided for removal only in instances of malfeasance by the trustee, or "for violation of their fiduciary obligations" or "for other legal grounds"]. Art. *IV,* 4.2(c), (e) and (i).

The 1986 Pension Plan provides that the trustee "shall continue to serve until death, resignation, or removal. Art. *X,* 10.3. A trustee's "term of office" is the duration of the Plan, and removal is permitted only upon conviction of the trustee of a felony, "for breach of a fiduciary duty, or other malfeasance, misfeasance or non-feasance", or incapacity. Art. *X,* 10.3(.2).

18. The relevant language of the Welfare Plans is identical to the language of the Pension Plans. Both the initial Welfare Plan and the Welfare Plan as amended in 1975 provide for lifetime appointment tenures for the trustees. The 1953 Welfare Plan provides that the trustee "shall continue to serve as such until the expiration of his term of office. As does the 1965 Pension Plan, the 1953 Welfare Plan stated that the trustee is "appointed to serve for the duration of this Trust," [Art. *IV,* 4.2(b) ], or until his death, incapacity, resignation, or removal as so provided. The 1953 Welfare Plan provided for removal only in instances of malfeasance by the trustee or "for violation of his fiduciary obligations" or "for other good legal grounds." Art. *IV,* 4.2(c), (e) and (i).

The 1975 Welfare Plan provides that the trustee "shall continue to serve until death, resignation or removal." Art. *V,* 5.3. A trustee's "term of office" is the duration of the plan, and removal is permitted only upon conviction of the trustee of a felony, "for breach of a fiduciary duty or other malfeasance, misfeasance of non-feasance", or incapacity. Art. *V,* 5.3(.2).

19. Under either plan (welfare or pension) the trustees are appointed for lifetime tenures absent incapacity, resignation or removal for malfeasance, misfeasance or non-feasance. Based upon the DOL Pension and Welfare Benefits Opinion Letter 85–41A and the deference to be accorded

such opinion, this Court HOLDS THAT THE WELFARE AND PENSION PLANS' PROVISIONS FOR THE LIFETIME AP-POINTMENT TENURES FOR THE TRUSTEES (UNION TRUSTEES AND EMPLOYER TRUSTEES ALIKE) AB-SENT INCAPACITY, RESIGNATION, OR REMOVAL FOR MALFEASANCE, MIS-FEASANCE OR NON–FEASANCE ARE CONTRARY TO THE POLICIES OF ERISA AND ARE THUS LEGALLY VOID.

20. The defendant trustees make three vague arguments in opposition to the plaintiffs' motion for summary judgment. The first argument appears to be that ERISA had not been enacted when the Welfare Plan and the Pension Plan were originally enacted in 1953 and in 1965, respectively, and, therefore, ERISA does not apply. This view is clearly erroneous. Congress intended ERISA to apply to the types of plans in question, and the amended plans specifically state that the plans are intended to comply with ERISA. 1986 Pension Plan, Art. *XVIII* 18.2.; 1975 Welfare Plan, Art. *XII* 12.1. The Court HOLDS THAT ERISA APPLIES TO THE PLANS IN QUESTION.

21. Regarding the second argument, it appears to the Court that the defendant trustees are asserting that over the years the plaintiff Trades Council has approved amendments to the Plans containing the lifetime appointments tenures for trustees, thereby "reaffirming the policy that it was their [the Building and Trades Council's] desire for union [indeed, for all] trustees to serve lifetime appointments." Defendant Trustees' Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment (p. 2). This argument, if it is an argument, is unconvincing. If a provision violates ERISA, then the provision is void, regardless of a Plan sponsor's commitment to the provision.

22. The third argument goes to the weight of the DOL Opinion Letter 85–41A. The defendant trustees state:

> The Plaintiffs, in their brief, cited a Department of Labor opinion dated December 5, 1985 supporting the position

that the Department is generally of the view that lifetime employment for a Pension Fund Trustee would be inconsistent with ERISA's fiduciary responsibility provisions. It must be pointed out that this is merely an opinion, much like that of an Attorney General's opinion, and that it certainly cannot be given the weight of a judicial ruling. It should also be noted that although the Congress most certainly had ample opportunity to do so, they did not choose to explicitly prohibit lifetime appointments under ERISA. Had this legislative body desired to prohibit the widespread practice of lifetime appointments on Pension and Welfare Plans, they most certainly would have do so in the legislation itself.

Defendant Trustees Brief in Opposition, p. 2.

The Court has previously cited the United States Supreme Court case which provides that such "opinions" by an executive agency are to be given "considerable deference". Because of the deference owing to such an opinion letter, the DOL Opinion Letter 85–41A is not "merely an opinion." The defendant trustees have cited no persuasive authority supporting a conclusion contrary to the "opinion" stated in the DOL Opinion Letter 85–41A.

As for defendants' argument that Congress could have prohibited lifetime appointments had it chose to do so, it is no secret that Congress left many gaps in ERISA. This Court will not interpret Congress' silence on the issue of lifetime appointment tenures as congressional intent for or against such practices.

23. The defendant trustees' fourth argument is based on a recent ERISA action arising out of Missouri. *Holcomb v. United Automotive Association of St. Louis, Inc.*, 658 F.Supp. 84 (ED MO 1987). In *Holcomb*, the plaintiff brought an action against the plan in question, the plan sponsor (the Association), and all of the trustees, seeking a declaratory judgment that the plan's provision that trustees may be removed only for cause violates the fiduciary standards under ERISA. The plaintiff also sought an order removing two of the

trustees from office. The district court discussed briefly the DOL Opinion Letter 85–41A, and then denied the plaintiff's requested relief, apparently because the plaintiff did not have the authority under the plan to appoint a successor trustee:

However, even if the Secretary's interpretation is adopted by this Court, Plaintiff would not be entitled to the relief he seeks. In the situation considered by the Secretary, the union that was attacking the lifetime trustee appointments apparently had authority under the trust agreement to appoint successor trustees. Hence, once the lifetime appointment provision was invalidated, the union could legitimately move to remove and replace the current trustees.

In the instant case, however, section 5.05 of the Trust Indenture provides that the Association has exclusive authority to fill vacancies on the Board of Trustees. Plaintiff does not contend that section 5.05 violates ERISA in any manner; consequently, the Union [the Plaintiff] lacks authority to appoint successor trustees and this Court has no authority to order the Association to replace Dorsey and Shackles with Union-designated trustees.

*Holcomb*, 658 F.Supp. at 86.

The defendants' reliance on *Holcomb* is misplaced. The crucial fact supporting the *Holcomb* rationale is not present in the instant case. Clearly, the plaintiff Mobile, Alabama—Pensacola, Florida Building and Construction Trades Council has the authority to appoint successor trustees upon the removal of the present union trustees (the defendants Carroll Daugherty, Robert Lowe, and J.C. Reeves). Art. *V*, 5.1, Welfare Plan adopted in 1985; Art. *X*, 10.1, Pension Plan adopted in 1986.

24. The defendants also point to the portion of the *Holcomb* opinion in which the district court states:

Moreover, removal and replacement of pension plan trustees pursuant to ERISA is generally appropriate only if such trustees "have engaged in 'repeated or substantial violation[s] of [their] responsibilities.'" *Katsaros v. Cody*, 744 F.2d 270, 281 (2nd Cir.1984), quoting *Marshall*

*v. Snyder*, 572 F.2d 894, 901 (2nd Cir. 1978). See also *Delgrosso v. Spang*, 769 F.2d 928, 937 (3rd Cir.1985).

*Holcomb*, 658 F.Supp. at 87.

It is arguable that the foregoing quoted language from *Holcomb* is *dicta*. Regardless, to the extent that the *Holcomb* opinion is inconsistent with the DOL Opinion Letter 85–41A, this Court declines to follow the *Holcomb* opinion. Nothing in the DOL Opinion Letter suggests or implies that a trustee should not be removed until *after* a "repeated or substantial violation" of the fiduciary duties. In fact, the DOL Opinion Letter suggests the opposite—"[t]he principles [of ERISA] ... may be frustrated where a plan sponsor that appoints a trustee can appoint a successor trustee only upon successfully bringing such charges as misfeasance or incapacity. ..."

■ 25. The Court HOLDS THAT A LIFETIME TERM OF APPOINTMENT FOR A PENSION PLAN OR WELFARE PLAN TRUSTEE VIOLATES THE FIDUCIARY RESPONSIBILITY PROVISIONS OF ERISA.

26. The plaintiffs assert that the plans' provisions allowing for removal of the trustees only upon death, resignation, incapacity, or malfeasance, misfeasance, nonfeasance or conviction of a felony violate § 302(c)(5) of the Labor Management Relations Act [LMRA] [29 U.S.C. § 186(c)(5)]. *Inter alia*, § 302(c)(5) requires that the "employees and employers [be] equally represented in the administration of such [pension and welfare plans]." The plaintiffs argue that

"[t]his requirement is to insure a 'checks and balances' operation of fringe benefit Plans, and avoid the potential for abuse which could arise if employers or Unions [the employees' representatives] dominated the funds. The concept of 'equal representation' not only requires equal number of trustees, but also requires that employers and Unions have the ability to exert control over their appointed trustees in order to insure that the 'checks and balances' concept works effectively."

Plaintiff's Brief in Support of Motion for Partial Summary Judgment, pp. 9–10. As support for their argument the plaintiffs cite *Teamsters Local No. 145, v. Kuba*, 631 F.Supp. 1063 (D.Conn.1986).

27. The *Kuba* opinion is well-written and sound. Its summation of the law involving § 302(c)(5) of the LMRA and the "equal representation" reads:

A federal district court, in considering allegations that a regulation adopted by plan trustees violates the "structural" requirements of Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5), "has the power to examine the regulation, its purposes and effects, and determine whether it is arbitrary or unreasonable, or—to restate the proposition—whether the regulation is devoid of any 'rational nexus or relationship to the requirements of Section 302(c)(5).'" *Nixon v. O'Callaghan*, 392 F.Supp. 1081, 1085 (S.D.N.Y.1975) *quoting Lugo v. Employees Retirement Fund of the Illumination Products Industry*, 366 F.Supp. 99, 103 (E.D.N.Y. 1973), *aff'd*, 529 F.2d 251 (2d Cir.), *cert. denied*, 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976). Accordingly, the court must overturn the instant regulation if, as the plaintiffs contend, it not only has no "rational nexus" to the requirements of Section 302(c)(5) but actually frustrates those requirements.

The Supreme Court has recognized that Congress provided in Section 302(c)(5) for equal representation of employers and employees so that the power of one group would check and balance the power of the other in the administration of employee benefit funds. *See National Labor Relations Board v. Amax Coal Company*, 453 U.S. 322, 330, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672 (1981) (observing that "[t]he requirement that employer and employee be equally represented among the trustees of an employee benefit fund prevents any misuse of those funds by union officers who would otherwise have sole control of vast amounts of money contributed by the employer"). *See also Associated Contractors v. Laborers International Union*, 559 F.2d 222, 228 (3d Cir.1977) ("Congress envisioned the conflict of views of employer and employee [trustees] as a distilling process which would provide safeguards against trust fund corruption").

The Court of Appeals [for the 3rd Circuit] in *Associated Contractors v. Laborers International Union, supra*, 559 F.2d at 227, recognized that, because "Section 302 is designed to prevent future misconduct, not merely to remedy past misdeeds," the mere "potential of abuse" is sufficient to defeat a challenged provision "[e]ven if the union's [or, presumably, the employer's] conduct thus far has been irreproachable." This court holds that the instant regulation clearly poses sufficient "potential of abuse" to render it unenforceable under Section 302.

For example, a faction that lost control of a union local in a bitter struggle might bear greater animosity toward the faction that replaced it than toward the employer; indeed, the defeated faction might even seek to ingratiate itself with the employer as part of its effort to regain control of the union. A trustee who was affiliated with the defeated faction might be less than diligent in checking abuses of power by an employer trustee. Yet, according to the rule adopted by the defendants, the union trustee could not be removed from office until after it was proved that he had engaged in conduct tantamount to a breach of fiduciary duty; indeed, under the interpretation of the rule offered by defendant Kuba, the trustee could be removed even in this situation only by a majority vote of the remaining trustees. *See* Tr. I at 64–68.

It is not enough to argue that no such "potential of abuse" exists in these circumstances because both the union trustee and the employer trustee could be held liable for breach of fiduciary duty. The "equal representation" requirement of Section 302(c)(5) was designed to be a prophylactic rule that would check abuses of trust before they could occur and possibly jeopardize the benefits of plan

participants. Furthermore, there is no assurance that any such abuses of trust would come to the attention of those who would be in a position either to remove the trustee from office or to bring an action for breach of fiduciary duty. In sum, the "checks and balances" that Congress sought to write into Section 302(c)(5) could be undermined, and "the conflict of views of employer and employee ... which would provide safeguards against trust fund corruption" could be stilled, if employers and unions could not remove at will any of their trustees in whom they lacked confidence without having to demonstrate "proper and just cause" for such removal.

. . . .

Accordingly, the court holds that the provision of the trust agreement requiring "proper and just cause" for the removal of a trustee violates Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5), and is therefore unenforceable.

■ 28. This Court holds that the Plans' provisions that trustees can be removed only upon death, resignation, incapacity, or malfeasance, misfeasance, nonfeasance or conviction of a felony "clearly poses sufficient 'potential of abuse' to render [them] unenforceable under section 302" of the LMRA. This Court holds that for the Plans *sub judice* to comply with § 302(c)(5) of the LMRA the trustees must be removable *at will* by the group which the trustee represents, *i.e.*, the Mobile,– Alabama–Pensacola, Florida Building and Construction Trades Council should be able to remove at will the Union-appointed trustees and the Mobile Chapter of the Associated General Contractors of America, Inc. should be able to remove *at will* the Employer-appointed trustees.

29. The defendant Plans raise the following questions: For the Plans to comply fully with ERISA and § 302(c)(5) of the LMRA

1) Must the appointing authority have the absolute right to remove a trustee at any time or may the Plans provide that trustees may serve a reasonable term of years subject to removal on those grounds now stated in the Plans; and

2) What is the effect of the Court's holding regarding the current trustees?

30. The Court points out that the DOL Opinion Letter 85–41A specifically declines to answer the issue presented under § 302(c)(5) of the LMRA: "Finally, it should be noted that this letter addresses only the fiduciary responsibility provisions of title I of ERISA. We offer no comments regarding any other law, including section 302(c) of the Labor Management Relations Act, 1947."

■ 31. In sum, ERISA permits limited terms for trustee tenures, while § 302(c)(5) of the LMRA permits trustees to serve only at will. At first blush these terms appear to be inconsistent; however, the Court is of the opinion that the terms can be reconciled. To comply fully with ERISA and § 302(c)(5) of the LMRA, trustees may be appointed for limited terms as described in the DOL Opinion Letter 85–41A. Such limited terms will provide for a continuity in the administration and management of the plans and yet insure that the trustees are responsive to the participants of the plans. Regardless of the length of the limited terms of years, the trustees may be removed at anytime at will. To illustrate, assume that the limited term for trustees will be three years. Union Trustee, Mr. X elected in 1988, shall serve as trustee for three years (that is, until 1991 when his/her successor is appointed) or for a shorter period of time if the Trades Council removes (at will) Mr. X prior to the end of the three year period. If Trustee Mr. X is removed at will prior to the completion of the three year term, the Trades Council would then appoint a "replacement trustee" to serve the remaining time of Mr. X's three year term. There appears to be no reason why Mr. X could not be reappointed as trustee for another three year term when his current three year term expires.

■ 32. The Court is of the opinion and so orders that staggered three year terms for the Plans trustees are most appropriate

in these circumstances. It is ORDERED that the Plans be amended to include the following provisions: The trustees shall serve staggered three year terms. Each year the Trades Council shall elect one individual to serve as the new union trustee, and the AGC shall elect one individual to serve as the new employer trustee. If the Unions and employers so choose, they can provide that trustees may (or may not) be re-elected. Should a vacancy occur, the appropriate group (either the Trades Council or AGC, depending on whether the vacancy is created by the leaving of a union or employer trustee) shall elect an individual to serve the remaining unexpired term. In order to implement the staggered terms, it is necessary that the Trades Council elect an individual to fill an initial one year term and for the AGC to do the same. The Trades Council and AGC will each need to elect an individual to serve an initial two year term and likewise for a three year term.

33. On March 31, 1987, plaintiffs Ray Helton, Terrance Lang, and Gordon Pennington were elected by the Trades Council as the successor union trustees. By this election the Trades Council attempted to replace the three defendant union trustees, namely Carroll Daugherty, Robert Lowe, and J. C. Reeves. The latter refused to step down and/or resign, and the plaintiffs brought this action. Having been approved by the Trades Council as evidenced by the March 31, 1987, election, the Court knows of no reason why Messrs. Helton, Lang and Pennington should not serve as the union trustees. Although the defendant trustees Messrs. Daugherty, Lowe, and Reeves request that the Court leave them in as trustees for the sake of continuity of management, the Court declines to do so on the ground that the Trades Council has indicated (by the March 31, 1987 election) which individuals it wants as union trustees. It is

ORDERED that the Trades Council hold an election no later than and including May 18, 1988, to determine which union trustee shall fill the initial one year term, which union trustee shall fill the initial two year term, and which union trustee shall fill the initial three year term. The election shall be conducted by secret written ballot. The Trades Council shall provide this Court with proof of compliance by May 25, 1988.

At the present time there are two employer trustees (Mr. Walter Ernest and Mr. Jack Terry) and one vacancy. The Court knows of no reason why Messrs. Ernest and Terry should be removed as trustees. It is

ORDERED that the Mobile Chapter of the Associated General Contractors of America, Inc. ("AGC") hold an election no later than and including May 18, 1988, to determine which employer trustee shall fill the initial two year term and which employer trustee shall fill the initial three year term. As part of the same election, the AGC shall elect a third individual to fill the initial one year term. The election shall be conducted by secret written ballot. The AGC shall provide this Court with proof of compliance by May 25, 1988.

34. The Plans should be amended no later than May 18, 1988, to comply with the rulings in this Order.

35. The Court will retain jurisdiction of this matter until such time as the conforming amendments to Plans are made and elections are complete.