INDEPENDENT ASSOCIATION OF MUTUEL EMPLOYEES OF NEW YORK STATE, an unincorporated association; Louis Calabrese, Individually and as President of the Independent Association of Mutuel Employees of New York State; Ervin Schor, Charles Hahn and Louis J. Cozenza, Individually and as Union designated members of the Pension Committee for Employees of the Mutuel Department of the New York Racing Association, Inc., Plaintiffs-Appellees,

v.

The NEW YORK RACING ASSOCIATION, Inc.; Frank M. Basil, Individually and as Vice President, Treasurer and Comptroller of the New York Racing Association, Inc., and as Chairman of the Pension Committee for Employees of the Mutuel Department of the New York Racing Association, Inc.; and Edward L. Kilroe, Louis M. Walger and Thomas J. Fitzgerald as Employer designated members of the said Pension Committee, Defendants-Appellants,
and
Bankers Trust Company, Defendant.

No. 485, Docket 32172.

United States Court of Appeals
Second Circuit.

Argued May 8, 1968.

Decided June 18, 1968.

As Amended July 17, 1968.

James D. Walsh, New York City, for plaintiffs-appellees.

Arthur Mermin, New York City (Cahill, Gordon, Sonnett, Reindel & Ohl, William L. Dennis and Henry G. Bisgaier, New York City, on the brief), for defendants-appellants.

Before LUMBARD, Chief Judge, and SMITH and ANDERSON, Circuit Judges.

LUMBARD, Chief Judge:

Defendants appeal from an order of the district court denying defendants' motions for summary judgment and granting summary judgment for plaintiffs and directing that a pension plan for defendant New York Racing Association, Inc.'s employees be revised to conform with Section 302(c) (5) (B) of the Labor Management Relations Act of 1947 (Taft-Hartley Act), 29 U.S.C. § 186(c) (5) (B). The parties stipulated that the sole issue in this case is whether or not the pension plan, over which the employer maintains "absolute dominance," is violative of Section 302 of the Act, and they made cross motions for summary judgment pursuant to Fed.R. Civ.P. 56. We previously have held that federal courts have jurisdiction over declaratory judgment actions in Section 302 disputes. International Longshoremen's Association AFL–CIO v. Seatrain Lines, Inc., 326 F.2d 916, 918–919 (2d Cir. 1964). The district court held that Section 302 [1] was violated by the pension plan because it did not conform to Section 302(c) (5) (B). For reasons which follow, we reverse.

[1]. "RESTRICTIONS ON PAYMENTS TO EMPLOYEE REPRESENTATIVES

SEC. 302. (a) It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or

Plaintiff, Independent Association of Mutuel Employees of the State of New York, is a labor union representing as exclusive bargaining agent more than 600 employees of the Mutuel Department of NYRA, a statutory corporation created in 1958, McK. Unconsolidated Laws § 7902 (1961), for the purpose of conducting thoroughbred racing in the State of New York. Following arm's length bargaining between the union and NYRA's predecessor, a collective bargaining agreement was signed effective November 16, 1955 and, pursuant to its terms, the employer, on April 1, 1956, established a pension plan for the union members and entered into a trust agreement. Under the current collective bargaining agreement, NYRA may amend the pension plan only with the consent of the union.

The plan is financed by contributions of NYRA and the employees. All payments are made directly to the sole trustee, Bankers Trust Company. The

> agree to pay, lend, or deliver, any money or other thing of value—
>
> (1) to any representative of any of his employees who are employed in an industry affecting commerce; or
>
> (2) to any labor organization, or any officer or employee thereof, which represents, seek to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce; or
>
> (3) to any employee or group or committee of employees of such employer employed in an industry affecting commerce in excess of their normal compensation for the purpose of causing such employee or group or committee directly or indirectly to influence any other employees in the exercise of the right to organize and bargain collectively through representatives of their own choosing; or
>
> (4) to any officer or employee of a labor organization engaged in an industry affecting commerce with intent to influence him in respect to any of his actions, decisions, or duties as a representative of employees or as such officer or employee of such labor organization.
>
> (b) (1) It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value prohibited by subsection (a).
>
> \* \* \* \* \*
>
> (c) The provisions of this section shall not be applicable \* \* \*
>
> (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents): Provided: That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon and in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree within a reasonable length in time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement; and (C) such payments as are intended to be used for the purpose of providing pensions or annuities for employees are made to a separate trust which provides that the funds held therein cannot be used for any purpose other than paying such pensions or annuities; or \* \* \*"

trustee is in charge of the investment and handling of contributions to the trust and of the funds in the trust. The NYRA has the exclusive right to name the trustee and the union has no right to approve or disapprove of the employer's choice. The parties stipulated that Bankers Trust Company is not a "representative" of any of the employees of NYRA within the meaning of the Act. No funds in the trust are handled by or pass through the union.

Disbursements by the trustee must be authorized by the Pension Committee. Under the terms of § 2(b) of the Trust Agreement, the Pension Committee has power to order the trustee to pay moneys to plan members and beneficiaries and to the Pension Committee itself. However, as a matter of actual practice no funds are handled by or pass through either the Committee or its members. The Pension Committee consists of six members and a chairman. Three members are designated by NYRA and three members are designated by the union. The chairman is designated by the NYRA with the approval of the majority of the members of the Committee designated by the union. The present chairman, defendant Frank M. Basil,[2] is the Vice President, Treasurer and Comptroller of NYRA and acts as chairman of the employer's labor coordinating committee. The chairman casts the deciding vote when the Committee is deadlocked. The complaint alleged and defendants agree that there is a "controlling imbalance" in the Pension Committee whereby the employer maintains "absolute dominance of the Plan."

The district court held that the statute "permits but one type of plan which must comply in all respects with the elements set forth [in Section 302(c) (5)] or fall as an illegal payment under one or more of the first four subdivisions." We disagree.

■ As the language of the Act clearly indicates, a trust fund for the benefit of employees need not conform to the provisions of Section 302(c) (5) unless employer contributions to the fund would violate one or more of the provisions of Section 302(a). United States v. Annunziato, 293 F.2d 373, 379 (2d Cir.), cert. denied, 368 U.S. 919, 82 S.Ct. 240, 7 L.Ed. 2d 134 (1961); Mechanical Contractors Association v. Local Union 420, 265 F.2d 607, 611 (3rd Cir. 1959); Sheet Metal Contractors Association of San Francisco v. Sheet Metal Workers International Association, 248 F.2d 307, 315 (9th Cir. 1957); Paramount Plastering, Inc. v. Local No. 2, D.C., 195 F.Supp. 287, 292, aff'd, 310 F.2d 179 (9th Cir. 1962); Shapiro v. Rosenbaum, 171 F.Supp. 875, 878 (S.D.N.Y.1959). See United States v. Ryan, 350 U.S. 299, 305, 76 S.Ct. 400, 100 L.Ed. 335 (1956); International Longshoremen's Association v. Seatrain Lines, Inc., 326 F.2d at 919; S.Rep.No. 1739, 84th Cong., 2d Sess. 58 (1956); H.R.Rep.No. 510, 80th Cong., 1st Sess. (1947).

■ We also disagree with the district court's alternative holding that NYRA's payments to the trust fund constitute payments to a "representative of employees" in violation of Section 302(a) (1). While we agree that the independence of the trustee is not determinative since Bankers Trust Company merely has custody of funds which are disbursed by order of the Pension Committee, the district court erred in finding that "at least 50% of the Fund is dominated and controlled by the employee representatives" on the Pension Committee.

The pension plan makes it clear that the employee members of the Committee may not order any disbursement of trust funds without the approval of at least two employer representatives.[3] If the

---

2. The parties have agreed that the question whether or not the defendant Basil's appointment and tenure as Chairman of the Pension Committee conformed to the technical requirements of the pension plan is not at issue in this case and that determination of this appeal is without prejudice to any claim plaintiffs may wish to make with respect to that issue.

3. § 8.02 The Trustee shall disburse payments contemplated by the Pension Plan

employee and employer members of the Committee are deadlocked, the Chairman who is chosen by and represents the employer casts the tie-breaking vote. We think it is clear that the Pension Committe is not an employee representative because, as the parties have stipulated, there is a "controlling imbalance" on the Pension Committee which gives NYRA "absolute dominance over the plan." Unlike the trusts in Mechanical Contractors Association v. Local Union 420, supra, Sheet Metal Contractors Association v. Sheet Metal Workers International Association, supra, and Local No. 2 of Operative Plasterers & Cement Masons v. Paramount Plastering, supra, the union does not have an equal voice with the employer in the management of this pension plan.[4]

■ The purpose of Section 302 is to prevent unions and union officials from demanding that employers contribute to "welfare funds" under the control of the union which the union's officials could use as they saw fit. Arroyo v. United States, 359 U.S. 419, 425–426, 79 S.Ct. 864, 3 L.Ed.2d 915 (1959); United States v. Ryan, 225 F.2d 417 at 423–424, 425–426; 350 U.S. at 304–306, 76 S.Ct. 400. What Congress wished to accomplish by enacting Section 302 was to give the employer an equal voice with the union in the administration of union-established welfare funds. See Cox, Some Aspects of the Labor Management Relations Act, 1947, 61 Harv.L.Rev. 274, 290 (1948). There is nothing in the history of the legislation to indicate that it was meant to require an employer to give a union an equal voice in employer-established welfare funds.

■ When a welfare fund or trust is established by the employer and the plan specifies the conditions under which funds may be disbursed and makes it impossible for the representatives of the employee who participate in the administration of the plan to use any funds as they see fit, or to authorize use of funds without the employer's consent, the dangers which Section 302 was designed to combat are not present and there is no need to invoke the specific safeguards of Section 302(c) (5). See Lewis v. Benedict Coal Corp., 361 U.S. 459, 465, 80 S. Ct. 489, 4 L.Ed.2d 442 (1960); Arroyo v. United States, 359 U.S. at 426, 79 S.Ct. 864.

Reversed and remanded to the district court for entry of summary judgment in favor of defendants.

---

only upon instructions of the Pension Committee in accordance with the provisions of this Pension Plan.

§ 10.01 This Pension Plan shall be administered by a Pension Committee consisting of six members and a Chairman, each of whom shall serve without compensation. * * *

§ 10.05 A quorum of the Committee for the transaction of business at any meeting of the Committee shall consist of any four members of the Committee, at least two of which shall be members of the Pension Committee selected by the Employer and at least two selected by the Union. * * *

§ 10.06 The Committee may take action without a meeting and any action approved in writing by any four members of the Committee, exclusive of the Chairman, at least two of which shall be members of the Pensions Committee selected by the Employer and at least two selected by the Union shall be the act of the Committee.

§ 10.08 The Pension Committee shall have such powers as may be necessary for the proper administration of the Pension Plan, including but not limited to, the following:

*    *    *    *    *

(e) To authorize the Trustee to make all disbursements from the Trust in accordance with the provisions of the Pension Plan and to establish necessary procedures therefor.

4. While the union could disrupt the operation of the plan to some extent by instructing its representatives on the Pension Committee not to attend meetings or sign disbursement authorizations, there are appropriate remedies under state law for intentional obstruction of the operation of the plan. Furthermore, such tactics could hardly defeat the purpose of the Act since the unions still would be unable to divert trust funds for its own use.