**Terry HOLCOMB,**
**Appellee/Cross-Appellant,**

v.

**UNITED AUTOMOTIVE ASSN. OF ST. LOUIS, INC., et al.,**
**Appellants/Cross-Appellees.**

**Nos. 87–1909 and 87–1941.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 11, 1988.

Decided July 20, 1988.

Rehearing and Rehearing En Banc Denied in No. 87–1909 Sept. 28, 1988.

Thomas G. Bearden, St. Louis, Mo., for appellants/cross-appellees.

Clyde E. Craig, St. Louis, Mo., for appellee/cross-appellant.

Before McMILLIAN and BOWMAN, Circuit Judges, and HARRIS,* Senior District Judge.

OREN HARRIS, Senior District Judge.

This is an appeal from an order entered by the District Court[1] for the Eastern District of Missouri granting summary judgment on the plaintiff's motion relating to the Labor Management Relations Act (LMRA) claim, but denied as to the plaintiff's claim pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 658 F.Supp. 84 (1987). The district court also denied the defendants' cross-motion for summary judgment as to the plaintiff's LMRA claim, but granted defendants' cross-motion for summary judgment as to the ERISA claim. Furthermore, the district court proceeded to restructure a part of the Trust Indenture Plan involved in their dispute.

The action was commenced originally by plaintiff-appellee Terry Holcomb (Appellee) a participant in the United Automotive Association Indenture and Pension Plan (Plan) against the defendants, United Automotive Association of St. Louis, Inc. (Association), Edwin D. Dorsey, William H. Shackles, Edwin Epstein and Howard Eldridge in their capacities as individuals and as Trustees of the Plan. In his complaint Appellee alleged that the Plan was being administered in a manner which violated the fiduciary standards imposed by ERISA, 29 U.S.C. § 1001, et seq. It was alleged by Appellee that Appellants Dorsey and Shackles had violated fiduciary duties owed to a pension plan separate and distinct from the instant Plan. It is also alleged that the Plan was in violation of the structural requirements of the Taft-Hartley Act § 302(c)(5), 29 U.S.C. § 186(c)(5) as amended. This claim is based on the fact that Teamsters Local 618 (Union) was given no notice in the selection and/or removal of the Plan's Trustees.

In a Memorandum dated December 23, 1986, Counts II, III and IV of the complaint were dismissed by the court based on the Appellee's lack of standing to pursue the claims alleged therein.

Subsequently, cross-motions for summary judgment were filed by the respective parties on the Appellee's remaining ERISA (Count I) and LMRA (Taft-Hartley) claims (Count V).

The district court permitted Messers. Dorsey and Shackles to remain as Trustees of the Plan, but directed that each would serve subject to the removal by the Union at any time and that their replacements would henceforth be named by the Union. The court in its order directed that the Union be given "equal representation" on the Plan's Board of Trustees. On March 27, 1987, the Appellants filed a motion to amend the district court's order of March 17, 1987, which was denied by order of the court June 17, 1987.

As already noted, cross-motions for summary judgment were filed by both parties. However, no appeal was taken by Appellee with respect to the district court granting Appellants' motion for summary judgment on Appellee's ERISA claim.

The association is a not-for-profit corporation whose membership consists of both Missouri and Illinois businesses engaged in marketing of automobile parts and equipment. A number of the employees of the Association's membership are members of the Union. Prior to March, 1978, employee members of the Union were participants in a Central States, Southeast and Southwest Areas Pension Plan.

The collective bargaining agreements between the Association and the Union expired on February 28, 1978. The Association proposed to the Union that in lieu of continuing the Central States Plan that the Association establish, maintain and administer a separate pension plan to be known as "Union Automotive Association Trust Indenture and Pension Plan". The Union concurred in the proposal and the "Indenture and Pension Plan" was established by

---

* The Honorable Oren Harris, Senior United States District Judge for the Western District of Arkansas, sitting by designation.

1. The Honorable James H. Meredith, Senior United States District Judge for the Eastern District of Missouri.

the Association, effective March 1, 1978. The stated goal of the Plan was to provide benefits to the members substantially in excess of the benefits they would receive by continuing with the Central States Plan.

The new Trust Indenture Plan provided that it was sponsored, established and maintained by the Association (Section 11.-04). It was primarily a plan for the employees pursuant to Collective Bargaining Agreement with the automotive parts industry. There is no dispute by the parties that it was intended that the Trust Indenture Plan would be subject to the requirements of ERISA. However, there was specific provision in the plan that it was *not* to be subject to the provisions of LMRA § 302(c)(5), Taft-Hartley Act as amended. It was further made clear that the Plan was understood to be an employer-dominated plan.

Section 11.04 of the Trust Indenture Plan made specific reference to Section 4.11 of the new Collective Bargaining Agreement between the Association and the Union. It is also to be noted that Messers. Dorsey and Shackles were at that time serving as officers of the Union and that they continued their service as officers until they were terminated in a regular union election, January, 1982, at which time they were replaced as officers.

Section 5.01 of the Trust Indenture Plan provided that the Board of Trustees would consist of four natural persons, specifically naming Messers. Dorsey, Shackles, Epstein and Eldridge. Although they were specifically named in the Trust Indenture Plan, it was stated that they were formally appointed by the Association. There is no provision or mention included in the Trust Indenture Plan or the Collective Bargaining Agreement between the parties that the appointment of the four named individuals hinged upon acceptance by the Union. However, the Collective Bargaining Agreement entered into by the parties provided in Section 4.11 that each of the four individuals would be accepted by the employer.

The Trust Indenture Plan included language that Dorsey and Shackles would remain as Trustees "until their death, resig-nation or removal for cause" in which event, the survivor (of them) would be authorized to recommend the successor subject to the approval of the remaining Trustees and the Association. Epstein and Eldridge were to be subject to removal by the Association at any time.

The Plan also provided that the successor to either of the initial Trustees were to be subject to removal at any time by the Association, Section 5.03. Except for the limited power of Dorsey and Shackles to recommend an initial successor for the first of them to die, resign or be removed for cause, the Association retains the sole and exclusive right to fill vacancies on the Board of Trustees. There are no provisions in the Trust Indenture Plan which gives the Union the authority to remove or name any Trustee.

DISTRICT COURT DECISION

In its order and memorandum dated May 19, 1987, the district court directed that the Trust Indenture Plan be reformed to bring it into conformity with the structural requirements of the Taft-Hartley Plan as provided in § 302(c)(5), 29 U.S.C. § 186(c)(5) as amended. In its memorandum the district court directed that the Union be given "equal representation on the Trust Indenture Plan's Board of Trustees" by providing that the Union have authority to remove and replace two of the four Trustees (i.e. Dorsey and Shackles).

The first issue for the Court's determination on the appeal is whether jurisdiction is available on motions and cross-motions for summary judgment pursuant to Federal Rules of Civil Procedure. The appellants insist that the district court was without authority to rewrite the trust and contract provisions since statutory policy does not require employer-dominated plans as the Trust Indenture Plan involved in this action to conform to § 302(c)(5). The appellants further contend that the district court's order of March 17, 1987, clearly conflicts with the cardinal precept of the federal rule and the court's order should be overturned insofar as it directs that the instant plan be conformed to the structural re-

quirements of § 302(c)(5), 29 U.S.C. § 186(c)(5)(B).

One of the earlier decisions on the issue of jurisdiction involving "Trust Indenture Pension Plans" is *Independent Ass'n of Mutual Emp. v. New York Racing Ass'n*, 398 F.2d 587 (2nd Cir.1968). There the court was presented with a request on the part of the plaintiffs for an order requiring that a pension plan of defendant, *New York Racing Ass'n, Inc.'s*, be revised to conform with § 302(c)(5)(B) of the Labor Management Relations Act of 1947 (Taft-Hartley Act). The specific question was whether the employer maintaining "absolute dominance", is violative of § 302 of the Act.

Chief Judge Lumbard of the Court of Appeals, Second Circuit, speaking for the court stated, "We previously have held that federal courts have jurisdiction over declaratory judgment actions in Section 302 disputes. *International Longshoremen's Association AFL–CIO v. Seatrain Lines, Inc.*, 326 F.2d 916, 918–919 (2d Cir.1964). The District Court had ruled that Section 302 was violated by the pension plan because it did not conform to § 302(c)(5)(B)." Albeit, for the reasons stated, the case was reversed and remanded to the district court for entry of summary judgment in favor of the defendants.

In *Blackmar v. Lichtenstein*, 603 F.2d 1306 (8th Cir.1979) our Circuit Court of Appeals, Chief Judge Lay speaking for the court stated, "The trust instrument provides for the appointment of trustees on an annual basis. Under the common law of trusts, the trust instrument controls the appointment of trustees, absent legislation dictating otherwise." *Raffety v. Parker*, 241 F.2d 594 (8th Cir.1957); 2 A. Scott, Law of Trusts § 108.2 (3d ed. 1967); cf. *Blassie v. Kroger Co.*, 345 F.2d 58, 67 (8th Cir.1965) ("a fiduciary, after his removal or resignation, does not have sufficient official interest to authorize him to seek appellant review of an adverse judgment ..."). 

The Restatement (Second) of Trusts § 108 (1959) provides: If a trust is created and there is no trustee or if the trustee, or one of the several trustees, ceases for any reason to be trustee, a new trustee can be appointed ...

(b) by the person, if any, who by the terms of the trust is authorized to appoint a trustee.

Furthermore, Restatement (Second) of Trusts § 108, Comment f (1959) specifically states:

> *Terms of the trust.* A power to appoint trustees conferred by the terms of the trust can be exercised only under the circumstances and in the manner provided by the terms of the trust. (Emphasis in original.)

▮ Blackmar contends, 29 U.S.C. § 1001, et seq., the Employee Retirement Income Security Act, (ERISA), has modified the common law. While ERISA does modify the common law to a certain extent, there is no provision which takes the power of appointment away from the administrator where such power has been validly placed in his hands.

▮ The legislative history demonstrates that the trust instrument is to be followed unless it is inconsistent with the fiduciary requirements set out in ERISA.

> These salient principles place a twofold duty on every fiduciary: to act in his relationship to the plan's fund as a prudent man in a similar situation and under like conditions would act, and to act consistently with the principles of administering the trust for the exclusive purposes previously enumerated, *and in accordance with the documents and instruments governing the fund unless they are inconsistent with the fiduciary principles of the section.* (Emphasis added.)

S. Rep. No. 93–127, 93rd Cong., 2d Sess., *reprinted in [1974] U.S. Code Cong. & Admin. News, pp. 4639, 4838, 4866.*

Section 403(a) of ERISA states:

> [T]rustee or trustees shall be either named in the trust instrument or in the plan instrument described in section 1102(a) of this title or appointed by a person who is named fiduciary, ...

Subchapter IV of the Labor Management Relations Act (Taft-Hartley) was enacted

by Congress in 1947 after several years of highly sensitive and controversial consideration. During the development of the legislation principle members of the Congress sponsoring the act had substantial contacts with various individuals in both management and labor.

A typical example of the problem was the well-known incident which involved the Union, American Federation of Musicians, under the leadership of James C. Petrillo, its president. There was a work "stoppage" during the early forties. It continued for a substantial period of time and had an adverse effect on the industry and the public. The Taft-Hartley Act proposed restriction on certain actions considered to be illegal. Members of the American Federation of Musicians demanded "under the table payments". This brought on a second work stoppage which continued until December 1948. A settlement ensued by negotiations between the musicians, the Department of Justice and Senator Robert A. Taft, the principle author of the Taft-Hartley Act.

A thorough description of the background and history of the Taft-Hartley Act and specifically § 302 is included in the case of *Shapiro v. Rosenbaum*, 171 F.Supp. 875 (S.D.N.Y.1959). Judge Gignoux, United States District Judge, SDNY, applied § 302 to certain trust agreements as to whether or not the trustee is a "representative of employees" within the meaning of § 302 of the Taft-Hartley Act.

The question of the trustee in administration of the Trusts dominated and controlled by American Federation of Musicians was a subject of consideration. In his interpretation of employee representative, § 302, he stated at page 885:

"The legislative history of Section 302 shows that it was directed against the establishment of funds exacted from employers and administered by union officials at their unlimited discretion and without any obligation whatsoever to account. See, e.g., 92 Cong.Rec., Part 4, 79th Cong., 2d Sess., 1946, p. 4893 (Senator Byrd), p. 4897 (Senator Knowland), p. 4898 (Senator Ball); S.Rep.No. 105, 80th Cong. 1st Sess., 52 (1947); 93 Cong.Rec., Part 4, 80th Cong., 1st Sess., 1947, p. 4678 (Senator Ball), p. 4678 (Senator Byrd), p. 4679 (Senator Pepper), pp. 4746 and 4747 (Senator Taft)."

As the Supreme Court stated in *United States v. Ryan*, 350 U.S. 299, at page 304, 76 S.Ct., 400 at page 404, 100 L.Ed. 335 (1956):

"In 1946 Congress was disturbed by the demands of certain unions that the employers contribute to 'welfare funds' which were in the sole control of the union or its officers and could be used as the individual officers saw fit."

In *Niagara of Wisconsin Paper Corp. v. Paper Industry*, the Eighth Circuit Court of Appeals affirmed the decision of the Honorable Diana E. Murphy, District Judge, in applying LMRA, 29 U.S.C. § 186(c)(5) and ERISA, 29 U.S.C. §§ 1001–1368 (1976), on the dispute involving a large Multi-Employer Pension Fund, 800 F.2d 742 (8th Cir.1986).

In the *Niagara* case the fund operated as a trust, providing pension and other benefits to employees covered under collective bargaining agreements negotiated by various affiliates of the United Paper Workers International Union. Niagara is a manufacturer of paper products and from 1973 through January 31, 1981 Niagara made contributions to the fund on behalf of the eligible employees. In January 1981 Niagara withdrew from the Fund and established its own pension plan for the benefit of its employees. Pursuant to a collective bargaining agreement with its employees Niagara agreed to make up any benefits or credits cancelled or denied by the Fund due to Niagara's withdrawal from the Fund. The district court dismissed Niagara's claim to compel arbitration as untimely and under ERISA for lack of subject matter jurisdiction. However, the district court also denied the Fund's motion to dismiss Niagara's claim under LMRA holding that there was jurisdiction. The remaining LMRA claims proceeded before the court on cross-motions and the district court determined that the trustee's actions were not arbitrary and capricious.

*Quad City Builders Ass'n v. Tri City Bricklayers U. No. 7*, 431 F.2d 999 (8th Cir.1970) is of substantial importance in that it is directly in point. The issues there are precisely the same as involved in this appeal. The late Van Oosterhout, United States Circuit Judge, Eighth Circuit, speaking for the court concluded that jurisdiction in the district court was established under § 302(e) of the Act. The issue was whether the defendants were maintaining and administering Tri City Bricklayers Union No. 7 Welfare Fund in violation of the equal representative requirement of § 302(c)(5)(B). The district court was affirmed to the extent that it enjoined a trustee from serving so long as he continued his membership in the Union. However, the court also enjoined others from acting as employer trustees unless and until reappointed by fair election proceedings in conformity with the LMRA Act.

In the instant action on appeal, the district court correctly concluded that it had jurisdiction over plaintiff's claims pursuant to LMRA, 29 U.S.C. § 186(e) and ERISA, 29 U.S.C. § 1132(e)(1). See *Teamsters Local No. 145 v. KUBA*, 631 F.Supp. 1063 (D.Conn.1986).

By affidavit it is established that the plaintiff is "not now and never has been a participant of the [618 Pension Plan] as related to Counts II, III and IV of the complaint". These counts were dismissed by the district court.

Relying on the decision in *Costello v. Lipsitz*, 547 F.2d 1267 (5th Cir.1977), the district court concluded that the equal representative provision of the Act is applicable to employer trust funds and pension plans. Therefore, the plaintiff's allegations in Count V states a valid claim.

The crucial question involves the status of trustees pursuant to the provisions of the plan and compliance with ERISA and LMRA. The court reached the conclusion that the plan as currently established and administered violates the structural requirements of § 302(c)(5)(B).

In view of our ruling as applicable to Count I and Count V, it is unnecessary for the court to reach the issues as to Counts II, III and IV.

It is well-established that litigation involving trust and indenture plans such as with this appeal of summary judgment is appropriate.

On the basis of our determination from the overwhelming evidence and the applicable law based on the substantial record in the case, the district court's decision was not clearly erroneous.

The order of the district court is affirmed.